**Dr. Harold L. LITTLE, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**No. 79–4013.**

United States District Court, C. D. Illinois.

May 29, 1980.

Walter D. Braud, Rock Island, Ill., for plaintiff.

R. John Seibert and Surell Brady, Attys., Dept. of Justice, Washington, D. C., Janet L. Jannusch, Asst. U. S. Atty., Peoria, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This action involves the allegedly improper denial of plaintiff's applications for certification in the minority business program of the Small Business Administration (SBA). Before the court at this time is defendants' motion for summary judgment pursuant to Rule 56, F.R.Civ.P. Plaintiff has withdrawn his motion for summary judgment and now asserts that there are substantial and material questions of fact which preclude summary judgment for defendants. Plaintiff and defendants have thoroughly briefed the issues, and extensive materials in support of their respective positions are before the court.

In his complaint, as amended, plaintiff essentially asserts two separate, although related, claims for relief. The first claim seeks judicial review, pursuant to the Administrative Procedure Act (APA), 5 U.S.C.

§ 701 *et seq.*, of the allegedly improper administrative decision of the SBA. The second claim, based upon the Civil Rights Act of 1870, 42 U.S.C. § 1981, alleges that defendants racially discriminated against plaintiff in denying his applications.

The issue directly before the court, as on any motion for summary judgment, is whether the materials before the court present a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. Rule 56, F.R.Civ.P. The moving party has the burden of clearly establishing both of these conditions. All inferences to be drawn from the facts contained in the affidavits, exhibits, and depositions must be drawn in favor of the party opposing the motion. *Cedillo v. Int'l. Ass'n. of Bridge & Iron Workers*, 603 F.2d 7 (7th Cir. 1979). Applying the foregoing principles, the court finds that there are no genuine issues of fact which require a trial and that as a matter of law defendants are entitled to judgment.

## FACTS

Plaintiff is a black American and the sole owner of h. Lorenzo Industries, Inc., a small business concern located in Rock Island, Illinois. Defendants are the United States of America; the SBA; A. Vernon Weaver, National Director of the SBA; and Donna Harrigan, Chicago Regional Director of the SBA. Pursuant to § 8(a) of the Small Business Act, 15 U.S.C. § 637(a), the SBA has established a program (hereinafter cited as the 8(a) program) to aid disadvantaged small business concerns in contracting with the federal government. Eligible businesses are certified by the SBA and receive significant advantages in obtaining federal contracts. The criteria for eligibility are detailed in regulations developed by the SBA, which appear at 13 C.F.R. § 124.1–1(c).

On or about August 23, 1977, plaintiff formally applied to the SBA Chicago office for 8(a) certification. Plaintiff desired this certification in order to do contractual work for the Arsenal at Rock Island, Illinois. At this time in the Rock Island area there were two existing 8(a) certified businesses (Pace Development and Peco), both of which had contracts with the Arsenal for the type of work that plaintiff was interested in performing.

In a letter to plaintiff dated August 26, 1977,[1] plaintiff's application was denied, based on six stated considerations. In his deposition testimony, District Director Krueger stated that he did not personally review plaintiff's application, but accepted the recommended disposition appearing in the letter. The letter also advised plaintiff that his application could be reconsidered through a written request which demonstrated that the stated deficiencies had been overcome.

Over the following twenty months, plaintiff continued to express his desire to receive 8(a) certification, took steps to provide a more extensive application to the SBA, and took actions that would allegedly aid his eligibility for 8(a) certification. The latter included resigning from his position as a professor at a local college. Plaintiff states that he was told by David Wilson, an SBA Assistant Director for Procurement Assistance in Chicago, that this resignation was necessary for plaintiff to meet the economically disadvantaged requirement of 8(a) certification. Wilson supervised and was generally responsible for the processing of plaintiff's applications until November 1978, at which time Wilson ceased to work for the SBA. Leonard Harbin, an SBA Minority Small Business Specialist, supervised plaintiff's application subsequent to November 1978. Plaintiff states that during this twenty-month period he received indications from Wilson and John Smith, District Director of the Chicago SBA office, that his application would be approved.

On March 30, 1979, plaintiff's second application was submitted to the Chicago District Review and Evaluation Committee, which unanimously recommended that the application be denied. This recommenda-

---

1. This letter appears in full in the Appendix.

tion was then forwarded to defendant Harrigan, the SBA Regional Director, who reviewed the Committee's work and concurred in their recommendation. On April 6, 1979, Harrigan forwarded the Committee recommendation and her concurrence to William Clement, Associate Administer for Minority Small Business in Washington, D.C. In a letter of May 10, 1979,[2] Clement informed plaintiff that he was ineligible for participation in the 8(a) program. Three specific reasons for plaintiff's ineligibility are stated in this letter. These procedures for evaluation and review of plaintiff's 8(a) application appear to comply with SBA regulations and are not specifically challenged by plaintiff. Plaintiff filed this action on April 20, 1979, prior to his receipt of the letter denying his second application.

## I.

### A.

■ With respect to plaintiff's claim for judicial review of the administrative decision of the SBA, the original complaint sought injunctive and declaratory relief, as well as monetary damages. Plaintiff has withdrawn his claim for injunctive relief in light of the express prohibition of such relief in the Small Business Act.[3] While this provision precludes injunctive relief, it does waive sovereign immunity with respect to other types of relief. Plaintiff may assert his claims for declaratory relief, 28 U.S.C. §§ 2201, 2202; *Mar v. Kleppe*, 520 F.2d 867 (10th Cir. 1975); *S.C.L.C. v. Connolly*, 331 F.Supp. 940 (E.D.Mich.1971); *Pottharst v.*

*SBA*, 329 F.Supp. 1142 (E.D.La.1971); *American Electric v. U. S.*, 270 F.Supp. 689 (D.Hawaii 1967); and monetary damages, *Mar v. Kleppe, supra; Romeo v. U.S.*, 462 F.2d 1036 (5th Cir. 1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973); *Pottharst v. SBA, supra; Simpkins v. Davidson*, 302 F.Supp. 456 (S.D.N.Y. 1969).

Pursuant to 28 U.S.C. § 1331, the federal question necessary for jurisdiction here over this claim arises under the Small Business Act, 15 U.S.C. § 631 *et seq.* Contrary to arguments made by plaintiff in his memoranda, the APA does not provide an independent grant of jurisdiction for this court to review the SBA's actions. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). As a person adversely affected or suffering legal wrong because of agency action, the APA does provide plaintiff with standing to seek judicial review of the SBA's decision, 5 U.S.C. § 702.

■ The two express exceptions to judicial review under the APA, 5 U.S.C. § 701(a)(1) and (2),[4] do not apply to the agency action in this case. There is no statutory prohibition precluding court review of the SBA's action, except as noted above with respect to injunctive relief; and while the SBA's decision did involve a certain amount of discretion, it was insufficient to bring the action within the narrow scope of the agency discretion exception to judicial review.[5]

Judicial review pursuant to the APA must also satisfy finality and exhaustion requirements, 5 U.S.C. § 704. Plaintiff's

---

**2.** This letter appears in full in the Appendix.

**3.** 15 U.S.C. § 634(b)(1) provides:
"(b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property; * * *."

**4.** § 701(a)(1) and (2) provide:

"(a) This chapter applies, according to the provisions thereof, except to the extent that—
(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law."

**5.** The agency discretion exception is very narrow and applies when a statute is drawn in such broad terms that in a given case there is no law to apply. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). The Small Business Act, particularly 15 U.S.C. § 637, appears to provide relevant law for the court to apply in reviewing the agency action in this case.

claim challenging the propriety of the administrative decision appears to be final by reason of the May 10, 1979 letter of denial. There is no evidence that plaintiff has available further remedies that he should be required to exhaust prior to the court's review pursuant to the APA.

The proper standard of review to be applied is determined by the nature of the agency action which is under review, 5 U.S.C. § 706. Plaintiff asserts that the court should conduct a *de novo* review of the facts because of the agency's allegedly inadequate factfinding procedures and the adjudicatory nature of the decision, 5 U.S.C. § 706(2)(F). Defendants assert that review by the court is limited to the much narrower test of whether the action was arbitrary or capricious, 5 U.S.C. § 706(2)(A). Both parties agree that the principles established in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), determine the proper standard of review to be applied.

*Overton Park*, at page 415, 91 S.Ct. at page 823, states that "*de novo* review is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate." Specific factors, relied upon by plaintiff to demonstrate the inadequacy of the factfinding procedures in this case, are the short evaluation period for his first application and the allegedly inadequate investigation by Harbin with respect to the factors relied upon in the second denial.[6]

■ It does not appear to this court that the SBA's factfinding procedures were inadequate. Both denial letters sent to plaintiff state definite relevant factors as the bases for the denials. The full factual record supports the SBA's determinations with respect to these factors. Plaintiff has not demonstrated that there exist any factual errors in the SBA's findings. The fact that the SBA's procedures resulted in correct factual findings strongly supports the view that the procedures were adequate. Additionally, from the deposition testimony of Harbin, it does appear that he conducted a factual investigation on plaintiff's application. The fact that Harbin did not personally participate in all aspects of the investigation, but rather relied on subordinates and other personnel, does not undermine the sufficiency of the procedures. Plaintiff has not shown that the agency factfinding procedures were inadequate and consequently a *de novo* review of the facts by this court pursuant to § 706(2)(F) is unwarranted.

Rejecting de novo review, the proper standard to be applied is whether the agency action, findings, and conclusions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, § 706(2)(A). However, in applying this standard, plaintiff argues that the court needs to take further evidence because of alleged inconsistencies between the administrative file and the materials presented by plaintiff in opposition to summary judgment. Plaintiff is mixing the facts with judgments based on those facts. The alleged inconsistencies arise from disagreements on conclusions drawn from the facts, rather than actual conflicting factual assertions. Based on the extensive materials in the SBA file and the other materials presented by the parties, the court need not take further evidence in order to fully review the SBA's actions under the applicable APA standard.[7] Review under this stan-

6. These are the factors specifically cited by plaintiff in his memorandum. However, in determining the adequacy of the SBA's factfinding procedures, the court has considered the complete factual circumstances surrounding the SBA's actions.

7. John Smith, the SBA's Chicago district director, states in his deposition testimony that he thinks the administrative file contains all of the SBA's written information material to plaintiff's applications. It does appear that this file is a reconstruction, necessitated after the original file was lost. Plaintiff attributes significance to the fact that the original file was lost. While having some relevance, this fact alone has little probative value on the issues before the court. This view is supported by the fact that the reconstructed file is extensive and apparently accurate. Plaintiff has not challenged any of the materials contained in the file, but rather alleges, without support, that the original file was intentionally lost and therefore

dard is fully outlined in the *Overton Park* opinion:

"Section 706(2)(A) requires a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.' To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." (citations omitted) 401 U.S. at 416, 91 S.Ct. at 823–824.

### B.

### i.

■ In reviewing the administrative decisions of the SBA, the court places primary reliance on the two denial letters as supported by the administrative file. These letters were sent to plaintiff to notify him of the SBA's decisions and the bases thereof. These letters are not simply form rejections, but present specific reasons in support of the decisions. The content of the letters establishes the substantive factors relied on by the SBA in denying plaintiff's applications. In determining whether the SBA's actions were arbitrary or capricious, the court must analyze and give significant weight to the factors expressly relied upon by the SBA. However, review is not necessarily limited to those factors and the court has considered the entire factual contexts of the SBA's decisions.

■ The statute which authorizes the 8(a) program includes the following provision:

"No small business concern shall be deemed eligible for any assistance pursuant to this subsection unless the Administration determines that with contract, financial, technical, and management support the small business concern will be able to perform contracts which may be awarded to such concern under paragraph (1)(C) and has reasonable prospects for success in competing in the private sector." 15 U.S.C. § 637(a)(7).

In light of this statutory provision it appears that the SBA considered proper factors in arriving at its decisions. The extent of available government contracts, the existence of work in the private sector, and the operational capabilities of the small business firm, which in general are the considerations appearing in the denial letters, are factors reflected in this statutory mandate to the SBA. Having found that the SBA considered proper factors, the court must determine whether the result reached by the SBA in considering these factors was arbitrary or capricious. To this end the court will go through the factors stated in the letters of denial and discuss the bases for them in relation to the facts.

### ii.

The letter denying plaintiff's first application contains six stated considerations. The first is that there was insufficient contract support in the area of technical writing, which was plaintiff's proposed area of expertise. Plaintiff has presented evidence that the current 8(a) firms had substantial amounts of work in the technical writing area and that he was told by Colonel Payne of the Arsenal that more 8(a) certified firms were needed for this work.

The fact that there was substantial work for the current firms does not indicate that there was sufficient work available to adequately support additional firms, especially in light of the relatively poor profitability of the current 8(a) firm.[8] The competitive effect of an additional firm in the market could lessen the profitability and viability of the current firms, as well as limiting the

---

must have contained materials inculpatory of the SBA.

**8.** In information supplied by plaintiff, it appears that over a period extending from 1976 through 1979, Pace Development's net profits on its 8(a) contracts were less than two percent of the gross contract amounts.

prospects of a new firm. The SBA's responsibilities to aid small minority businesses extended to Pace Development and Peco, as well as plaintiff.

It is unlikely that Colonel Payne was exposed to the full range of 8(a) certification considerations. His responsibilities and efforts are separate and distinct from those that guide the SBA. In contracting for the Arsenal, it would be in Colonel Payne's best interest to have as many available and bidding 8(a) contractors as possible. Consequently, any representations by Colonel Payne as to the need for 8(a) certified firms has a minimal amount of relevance with respect to the SBA's decision.

The other five considerations stated in the first denial letter all concern the failure of plaintiff to provide specific information to the SBA. This information involved the capabilities, history, and future plans of plaintiff's business and appears extremely relevant to the SBA's decision of whether to certify plaintiff. In plaintiff's letter of September 29, 1977, in which he responds to the first denial letter, plaintiff does not indicate that the denial letter was incorrect or mistaken in any respect. The substance of plaintiff's reply letter is that he did not think that the information which he failed to furnish was necessary or in some cases relevant. Plaintiff does not dispute that the listed information was in fact not supplied as part of his application.

The fact that a major consideration in the rejection of plaintiff's application was his failure to supply necessary information, provides a possible explanation as to why the SBA was able to deny plaintiff's first application so readily. Upon a cursory examination it may have been apparent to the SBA that plaintiff's application lacked information necessary for a thorough evaluation or an extended investigation. Considering this and the fact that the letter advised plaintiff that his application would be reconsidered if he overcame the stated reasons for the denial, the immediate nature of the denial cannot be construed as evidence of an arbitrary or superficial response.

iii.

With respect to plaintiff's second application, the denial letter lists three reasons for plaintiff's ineligibility. In considering the SBA's actions on plaintiff's second application, unlike the first application, the court has the extensive administrative file which details the steps taken by the SBA in arriving at its final decision. The first listed reason in the second denial letter is the same as that appearing in the earlier denial letter—lack of contract support. The court's earlier statements concerning the competitive effects on all firms of plaintiff's entry into a pre-existing market is equally relevant here. The minutes of the SBA review and evaluation committee meeting indicate that the committee was aware that the two existing 8(a) firms were having difficulties in obtaining a consistent flow of 8(a) contracts.

Plaintiff argues that Harbin, the SBA Minority Business Specialist who handled plaintiff's application after November 1978, "conducted no investigation and made no inquiry and had no facts upon which he could conclude that there was insufficient market support," and cites Harbin's deposition as support for these statements. While the deposition testimony does indicate that Harbin did not personally investigate all aspects of the application and did not remember some specific actions which he had taken, it does indicate that he did carry out an investigation and evaluation of plaintiff's application. He specifically recalled meeting with plaintiff and two of his employees, discussing the problems of the current 8(a) firms with other SBA personnel, and contacting the Arsenal about the relevant contract market. The administrative file also contains the notes of an SBA employee who personally investigated other facts and circumstances of plaintiff's application. These notes support the reasons relied upon in the denial letter.

The second reason for the denial was plaintiff's lack of private sector prospects. Plaintiff argues that prior to a 1978 amendment, the Small Business Act did not expressly contain a private sector requirement

and that Pace Development and Peco were not required to demonstrate private sector capabilities.

It is clear from the legislative history of the 1978 amendment that Congress had intended under the prior law for the SBA to consider a firm's private sector prospects. The intent of the 1978 amendments was to make express the standards which Congress had always intended for the SBA to apply in the 8(a) program. The legislative history emphasizes that the 8(a) program was not intended as a device by which firms could simply receive government contracts, but was intended to contribute to the firm's long-range viability as a stable business with a competitive position in the general economy.[9] The SBA's use of private sector prospects as a consideration in its certification decision was not only proper, but mandated by legislative policies. A firm without private sector potential would lack the long-range viability Congress sought to foster through the 8(a) assistance program.

■■ The failure of the SBA to require Pace Development and Peco to demonstrate private sector prospects at the time they sought certification, does not bind the SBA to a policy of never considering this factor. In light of the legislative policies underlying the 8(a) program and the subsequent difficulties of Pace Development and Peco,[10] it would appear that the SBA erred in not considering private sector potential with respect to Pace Development and Peco, rather than in applying the requirement to plaintiff. Additionally, the fact that different standards were applied to plaintiff would appear proper, in that circumstances were very different at the time of his application. Most importantly, there were already two firms operating in the relevant market. It would appear reasonable for the SBA to apply different guidelines to a new market in which there are no

firms and to an existing market in which there are two operating firms. The SBA could reasonably require plaintiff to demonstrate a higher probability of private sector success, because, unlike the first firms entering the government market, plaintiff would be subject to the competition of the existing firms in that market.

The third listed reason for the second denial was the inadequacy of plaintiff's work force with respect to performing technical writing contracts. Plaintiff does not dispute that his employees had no experience or training in this area. Plaintiff's argument is that Pace Development and Peco also lacked trained employees when they received their certification. Plaintiff's support for this position—the affidavits of Cantrill and Shepard—does not indicate what Pace Development and Peco were required to demonstrate to the SBA to receive their certification. The Shepard affidavit, in fact, indicates that Pace Development did have plans with respect to hiring employees experienced in the area of technical writing, i. e., the hiring of Shepard at the time of Pace's certification. Additionally, as discussed above with respect to the private sector requirement, the SBA is not bound to recommit prior oversights in the evaluation process.

Plaintiff also relies on the lengthy period between the denial of his first and second applications as evidence of the impropriety of the SBA's actions. From the administrative file it appears that the major reason for this delay was plaintiff's failure to supply necessary information to the SBA. In response to a letter from Congressman Railsback seeking information on the status of plaintiff's application, the SBA wrote, on February 5, 1979, that the reason for the delay was plaintiff's failure to furnish the information listed in the first denial letter. Other letters in the administrative file, dated September 13, 1978, October 4, 1978, and

---

9. The legislative history relied on by the court is derived from the relevant Senate and House Conference Reports, reprinted (1978), U.S.Code Cong. & Admin.News, pp. 3835, 3842–46, 3881–84.

10. It appears that Peco has ceased operating as an 8(a) contractor in Illinois and has moved into the 8(a) market in another state, while Pace Development is having operational problems because of its government contract dependency.

November 14, 1978, indicate that plaintiff's application was incomplete in that necessary materials had not yet been furnished. Plaintiff has presented no evidence that these materials had in fact been furnished. It also should be noted that for a portion of the period, September 9, 1977 through November 11, 1977, a national moratorium was placed upon the certification of any 8(a) firms.

### iv.

Plaintiff argues that Pace Development and Peco were less deserving than himself of the minority business assistance provided by 8(a) certification, but he has not demonstrated that these firms did not properly qualify for 8(a) certification. This court is not in a position to question the Congressional determination that Hispanic and other ethnic groups, as well as blacks, should be eligible for 8(a) assistance. Consequently, the mere fact that Pace Development and Peco did not have black ownership does not undermine the SBA's decision.

Under all of the facts and circumstances, and mindful of the narrow scope of judicial review, the court finds that the administrative decisions of the SBA were not arbitrary or capricious.

### II.

### A.

■ Plaintiff's second claim involves allegations that his 8(a) application denials were based upon racial discrimination. Specifically, plaintiff relies upon the Civil Rights Act of 1870, 42 U.S.C. § 1981,[11] with jurisdiction based upon 28 U.S.C. § 1343. Plaintiff seeks damages and equitable relief upon this claim. Under *Baker v. F & F*

*Investment Company*, 489 F.2d 829 (7th Cir. 1973), plaintiff's § 1981 claim seeking monetary damages is not barred by sovereign immunity.

■ In plaintiff's final memorandum, submitted after the hearing on the summary judgment motion, he states, with respect to his discrimination claim, "that title 42 U.S.C. § 1981 and title 42 U.S.C. § 2000–d [2000d] *et seq.* is controlling." Since the filing of plaintiff's complaint on April 20, 1979, this is the first occasion on which plaintiff has relied on 42 U.S.C. § 2000d, *et seq.*, which is Title VI of the Civil Rights Act of 1964. The Supreme Court has expressly recognized that § 1981 and Title VII of the 1964 Civil Rights Act are separate and independent, although related. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). It appears that a similar analysis would apply to Title VI and that plaintiff's invocation of this statute would have a substantial substantive effect on the issues in this case. Without expressing any view on the merits of a claim brought pursuant to Title VI, the court at this late stage in the litigation will not allow plaintiff to so fundamentally alter the basis of his action.

Defendants assert that plaintiff's claim should be construed by the court as an action under the Federal Tort Claims Act (FTCA). As so construed, defendants next argue that the action is barred by express limitations within the FTCA. Plaintiff nowhere states that his action is brought pursuant to the FTCA, and in analyzing plaintiff's claims, the court does not view them as being brought under the FTCA.[12]

---

**11.** Section 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

**12.** If plaintiff's action were construed as being brought under the FTCA, it appears that it would be barred. Provisions of the FTCA expressly preclude suits arising out of misrepresentation or deceit, 28 U.S.C. § 2680(h); *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); and require resort to administrative remedies prior to the institution of the suit, 28 U.S.C. § 2675; *Best Bearings Co. v. United States*, 463 F.2d 1177 (7th Cir. 1972). Under the facts here, these provisions would bar an FTCA action by plaintiff.

## B.

There is a conceptual problem with plaintiff's racial discrimination claim asserted under § 1981. Upon its face, § 1981 guarantees equality to all persons with respect to certain enumerated rights which are "enjoyed by white citizens." In our case, plaintiff complains of his failure to be certified by the SBA for participation in the 8(a) program. However, under the 8(a) program, white citizens have no rights. The intent and purpose of the 8(a) program was to provide a benefit to minorities. This benefit is not available to white citizens. Where plaintiff enjoys a status unavailable to white citizens, it is somewhat anomalous for him to argue that he is denied equal rights with white citizens. This position, asserted by defendants, while consistent with the plain language of § 1981, does not reflect the Congressional intent at the time of § 1981's enactment or the liberal construction afforded by the courts to the civil rights laws.

The touchstone of § 1981 is racial discrimination. Through § 1981, Congress intended to prohibit all racial discrimination with respect to the enumerated rights. *Jones v. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The use of the words "as is enjoyed by white citizens" was merely a reflection of the then current problem which Congress was attempting to remedy; i. e., black citizens were denied rights given to white citizens. As indicated in the discussion in *McDonald v. Santa Fe*, 427 U.S. 273, 287–96, 96 S.Ct. 2574, 2582–86, 49 L.Ed.2d 493 (1976), the specific reference to the rights of white citizens was intended to preclude the use of § 1981 in other areas where discrimination may have existed, such as with respect to age or sex, and not to limit its use with respect to racial discrimination. This view is further supported by the fact that § 1981's foundation is the Thirteenth Amendment prohibition on slavery rather than the Fourteenth Amendment's guarantee of equal rights. *Tillman v. Wheaton-Haven Recreation Assn.*, 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Jones v. Mayer Co., supra*. Consequently, plaintiff may base his claim of racial discrimination on § 1981.

Having thus decided, the court must determine whether plaintiff has established a prima facie case that precludes summary judgment for defendants. Under *Mescall v. Burrus*, 603 F.2d 1266, 1271 (7th Cir. 1979), the use of § 1981 must be guided by the principles announced by the Supreme Court for application of the Fourteenth Amendment to discrimination cases. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), involved the constitutional standard for adjudicating claims of invidious racial discrimination and provides the framework for determining the sufficiency of plaintiff's racial discrimination claim.

*Washington v. Davis* held that constitutional standards require a finding of a racially discriminatory purpose. A racially disproportionate impact alone is insufficient. The following statements from *Washington v. Davis, supra*, determine the outline of the necessary inquiry:

"Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another. It is also not infrequently true that the discriminatory impact * * * may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds. Nevertheless, we have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution." 426 U.S. at 242, 96 S.Ct. at 2048.

Relevant considerations in determining the existence of a discriminatory purpose are the historical background of the

decision, the specific sequence of events which occurred, the departure of the actual procedures followed from normal procedure, substantive departures, and contemporary statements by the decision-makers. *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). The underlying discriminatory purpose must not be the sole or even dominant factor that influenced the allegedly discriminatory action. It is sufficient for it to be a motivating factor. *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. at 563. Of course, evidence of a discriminatory purpose may be only circumstantial.

### C.

Plaintiff has alleged that the SBA's actions were discriminatorily motivated. However, there is a total absence of any credible evidence to support these allegations. Plaintiff argues that David Wilson, the SBA employee who handled his applications for a period of time, was racially biased and that this was the reason his applications were denied. There are no facts before the court to support this argument. Wilson ceased working for the SBA in November 1978, nearly five months before the formal evaluation and review of plaintiff's second application. Any connection between the actions of Wilson and the second denial are indirect and seriously attenuated. Drawing all inferences favorable to plaintiff, the court is unable to find any basis for plaintiff's allegations that the SBA, through Wilson or otherwise, was discriminatorily motivated. Plaintiff has failed to establish even the semblance of a prima facie case.

As evidence of a discriminatory intent, plaintiff asserts in his final memorandum that the SBA refused to provide technical assistance to him. Plaintiff has provided nothing to support this allegation. Presumably plaintiff would be personally aware of such a refusal by an SBA employee and yet no facts concerning such a refusal appear in either of plaintiff's two affidavits or in any other materials before the court. The complaint indicates that the SBA did assist plaintiff by referring him to the Chicago Economic Development Corporation for assistance in preparing a proper 8(a) application.

In addition to the lack of any credible evidence of a discriminatory intent or motive, plaintiff has failed to establish the existence of a significant racially disproportionate impact. In the Western Illinois area, on which plaintiff relies, there have been only two 8(a) certified firms, both of which qualified for 8(a) certification through Hispanic ownership. In his brief, plaintiff asserts that the Cantrill affidavit states that Peco, one of the 8(a) certified firms, was a "white front organization." This appears to be a mischaracterization of the Cantrill affidavit. The affidavit states that a Mexican-American was involved in the 8(a) certification of Peco. It does not state or even infer that the involvement of this Mexican-American was merely a sham used to achieve 8(a) certification. Nowhere in this affidavit or elsewhere in the materials before the court are there facts which demonstrate that Peco was not an eligible minority firm.

Plaintiff also asserts that "the agencies refusal of numerous Black applications including plaintiff's, is itself, evidence of discriminatory intent." However, plaintiff has not presented evidence that other black applications were in fact refused. The only evidence before the court concerning the racial composition of business firms is with respect to plaintiff, Pace Development, and Peco. From the facts involving these three firms, the court is unable to find a disproportionate racial impact sufficient to support a § 1981 claim.

The denial of applications for 8(a) certification is not rare. The mere fact that plaintiff's application was denied does not raise any presumption of irregularity. In answers to interrogatories, defendants state that in downstate Illinois and Iowa, fifty-nine firms have received 8(a) certification, while fifty-six firms have been denied such certification. Plaintiff has presented no evidence on the racial composition of these firms, i. e., whether black-owned firms con-

stitute a disproportionate share of the denials.

The court is unable to find special significance in plaintiff's dealings with the office of Congressman Thomas Railsback. On several occasions plaintiff met with the Congressman or members of his staff to discuss plaintiff's business and various government assistance programs. From these meetings, particularly one held in December 1978, at which John Smith, the SBA's Chicago District Director, was present, plaintiff thought that he had assurances that his 8(a) certification would be forthcoming. Congressman Railsback's district representative states in his deposition testimony that Smith indicated that a few things had to be worked out and that a decision would be rendered on plaintiff's application in a short time, not that approval was assured. It is apparent that neither Congressman Railsback, his staff, nor even Smith, would have the authority to guarantee favorable action on plaintiff's application.

Nowhere in the record before the court is there any credible evidence of racial animus on the part of the SBA or its employees. The court is aware that it is the exceptional case where there is clear, direct evidence of racial animus, and that in the typical case, the discriminatory racial purpose must be divined from inferences and implications arising out of circumstantial evidence. All that we have in this case are plaintiff's allegations in the complaint that Wilson's actions were racially motivated. Plaintiff does not even explain the basis for his belief that Wilson's actions were racially motivated. In neither of his own affidavits does plaintiff even address his dealings with Wilson.

■ The fact that the express reasons given by the SBA for their actions are substantially supported by the administrative file and other materials before the court is relevant in evaluating plaintiff's claim of invidious racial discrimination. The absence of a separate proper basis for the SBA's actions would support an inference of impropriety. In this case, the presence of separate, valid grounds which support the SBA's actions tends to negate the existence of any racial discrimination.

■ In considering the propriety of summary judgment on plaintiff's racial discrimination claim, the court is aware that, in general, questions of motive and intent are inappropriate for summary adjudication. *Cedillo, supra.* In granting summary judgment on this claim, the court relies not only on the absence of any evidence of discriminatory intent or motive, but also on the absence of any objective evidence of a racially disproportionate impact.

### D.

■ While not necessary to the holding in this case, because of the finding that plaintiff failed to establish a prima facie case of racial discrimination, the court finds that both individual defendants, A. Vernon Weaver and Donna Harrigan, would be entitled to summary judgment on the issue of their personal liability. Plaintiff conceded in his final memorandum that Harrigan, as an SBA administrator, probably could not be held personally liable as a representative of the SBA. The court is of the view that neither Weaver nor Harrigan could be personally liable under the circumstances of this case. Plaintiff has neither presented evidence nor even alleged facts indicating that Weaver or Harrigan had any personal involvement in the alleged discriminatory actions. Such personal involvement is required to hold them personally liable, as plaintiff seeks to do. *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971).

### CONCLUSION

It should be noted that the court's consideration of defendants' motion for summary judgment has not occurred at an early stage in this litigation. The complaint in this case was filed well over a year ago and widespread discovery has taken place. Numerous and extensive depositions have been taken. On plaintiff's motion, the court extended the period for discovery by three months. Consequently, plaintiff has had

adequate opportunity to investigate and develop the facts for his case.

On both claims asserted by plaintiff the court has found that there exists no genuine issues as to material facts. The bases of, and factual support for, the actions of the SBA are well established in the acknowledged and sworn materials before the court. Plaintiff's suspicions and allegations, standing alone, cannot create, and no other materials have created any issue of material fact requiring trial. Defendants are entitled to judgment as a matter of law. The SBA's denials of plaintiff's applications were not arbitrary or capricious and plaintiff has failed to make out a prima facie case of racial discrimination.

Accordingly, IT IS ORDERED that defendants' Motion for Summary Judgment is GRANTED and judgment shall enter herein for defendants.

## APPENDIX

First Denial Letter

SMALL BUSINESS ADMINISTRATION

CHICAGO DISTRICT OFFICE

219 S. Dearborn St.

Chicago, Illinois 60604

August 26, 1977

Harold L. Little
2225 4th Avenue
Rock Island, Illinois 61201

Dear Dr. Little:

The Small Business Administration (SBA) has reviewed your application for participation in the Section 8(a) Business Development Program. It is with regret that I must inform you that your application has been declined. This declination was based on the following considerations:

1. Minimal likelihood of sufficient 8(a) contracting support in your proposed area of expertise, technical writing.
2. Failure to provide any information evidencing your firm's technical capability to perform; i. e., resumes on professional and management staff, past experience in the industry, etc.

3. Failure to provide any financial information on the company. How do you propose to finance $960,000 worth of business during your first year of operation? Do you have any sources of credit? If so, to what extent and where?
4. No knowledge of the market in which you intend to enter. Commercial and Government customers are unknown, as well as competitors. Market area and market potential unidentified. It appears no effort has been made to research the technical writing market. Further no marketing strategy has been developed other than participating in the 8(a) Program.
5. No operational plan.

I regret we are unable to assist you in your business venture. We will, however, reconsider your application, provided, within six months from the date of this notification, we receive a written request for reconsideration demonstrating that the reasons for the declination have been overcome.

If you have any questions regarding this notification please feel free to contact David Wilson. He may be reached at 312/353–4664.

Sincerely,
/S/ Robert K. Krueger
Robert K. Krueger
Acting District Director
Chicago District Office

## APPENDIX

Second Denial Letter

U. S. SMALL BUSINESS ADMINISTRATION

Washington, D. C. 20416

Dr. Harold Little
H. Lorenzo Industries, Inc.
2225 Fourth Avenue
Rock Island, Illinois 61201

Dear Dr. Little:

We regret to inform you that H. Lorenzo Industries, Inc., has been determined ineligible for 8(a) program participation.

Pursuant to current 8(a) program eligibility criteria, in accordance with P.L. 95–507, for an applicant concern to qualify for 8(a) participation there must exist sufficient contract support to meet business plan projections, applicant concern must have a reasonable prospect for success in competing in the private sector and concern must exhibit adequate managerial capabilities in the chosen line of business.

H. Lorenzo Industries, Inc., has been determined ineligible for the following reasons, there is:

(1) At this time there is no available 8(a) contract support due to existing commitment to active 8(a) firms in the same or similar lines of business;

(2) No prospects for success in private sector due to no prior sales history in the field of technical writing and lack of evidence that a commercial market exists in the technical writing business;

(3) No evidence of a trained labor force or other personnel necessary to perform technical writing contracts.

Sincerely,
/S/ William A. Clement, Jr.
William A. Clement, Jr.
Associate Administrator for
Minority Small Business