Harold H. **PALMER**

v.

Honorable A. Vernon **WEAVER, In His Capacity as Administrator, U.S. Small Business Administration et al.**

Civ. A. No. 79–4564.

United States District Court, E. D. Pennsylvania.

April 16, 1981.

282

Harold Palmer pro se.

Antoinette R. Stone, Asst. U. S. Atty., Eastern District of Pa., Philadelphia, Pa., for defendant.

## MEMORANDUM

SHAPIRO, District Judge.

Plaintiff, Harold H. Palmer, brings this action against A. Vernon Weaver in his capacity as Administrator of the Small Business Administration ("SBA") and against various SBA officials[1] in their official capacities and alleges that the SBA's denial of his requests for a small business loan was unlawful. Plaintiff invokes the court's jurisdiction pursuant to Section 2[5](b)(1) of the Small Business Act, 15 U.S.C. § 634(b)(1) (1976) and seeks injunctive and declaratory relief, money damages, costs and attorney's fees.

Defendants, moving for dismissal or, in the alternative, for summary judgment, assert that the standard of review by district courts of SBA decisions is circumscribed and that judicial intervention is inappropriate here. Because affidavits and counter-affidavits as well as the motion papers have been submitted to and reviewed by the court, defendants' motion will be considered a motion for summary judgment under Fed. R.Civ.P. 56. *See*, Fed.R.Civ.P. 12. Defendants' motion is granted.

Plaintiff, a thirty-six year old black male, filed three loan applications with SBA between April, 1978 and November, 1979 to secure capital to open and operate a card and gift shop. All three applications were refused.

Palmer requested a SBA loan in the amount of $36,500 on April 14, 1978. The parties differ as to what next occurred. Defendants assert that Palmer's original application[2] contained several deficiencies which, unless corrected, would preclude the offer of a SBA loan, that he was so informed by letter of May 11, 1978,[3] and that the deficiencies were not cured by Palmer's May 14th letter in response which was re-

1. David P. Malone, in his capacity as Regional Director of the Philadelphia Region of the SBA; William B. Patterson, in his capacity as Former District Director of the Philadelphia Office of the SBA; William T. Gennetti, in his capacity as Current District Director of the Philadelphia Office of the SBA; Raleigh Jones, in his capacity as Acting District Director of the Philadelphia Office of the SBA; Carole A. Scheck, in her capacity as Chief, Financing Division, Philadelphia District Office of the SBA; Lillian K. Laurence, in her capacity as Acting Chief, Financing Division, Philadelphia District Office of the SBA; Robert B. Silikovitz, in his capacity as Assistant District Director for Financing and Investments, Philadelphia District Office of the SBA; Ms. Carter, in her capacity as Loan Officer, Philadelphia District Office of the SBA; James P. Guyer, in his capacity as Loan Officer, Philadelphia District Office of the SBA; H. P. Murphy, in his capacity as Assistant District Director for Minority Small Business; Daniel M. Sossaman, in his capacity as Field Representative in the Philadelphia District Office of the SBA.

2. Exhibit A to Defendants' Supplemental Memorandum in Support of Motion to Dismiss or in the Alternative for Summary Judgment.

3. Attached to Affidavit of Lillian Laurence; Defendants' Supplemental Memorandum.

ceived May 16; Palmer avers that he never received that or any other "deficiency notice."[4] Palmer asserts that his loan application was denied by letter dated May 6, 1978[5] and that the defendants could not have given his request the consideration required by law in the time between the application of April 14 and the denial on May 6. Defendants aver that the letter of denial was actually sent on June 6, 1978 and that the May 6 date was a typographical error.[6] Regardless of the actual date, the reasons for refusal given were:

    a. Lack of reasonable assurance that the business can be operated at a rate of profit sufficient to repay the loan and other obligations from earnings.

    b. Disproportion of loan requested and of debts to tangible net worth before and after the loan.

    c. Gross disproportion between owner's actual investment and loan requested.[7]

Palmer applied for reconsideration of the initial loan request in June, 1978. Upon reconsideration, his loan request was again declined.[8] Thereafter, upon Palmer's oral request the SBA entertained his letter of July 14, 1978 as an appeal to the District Director. Again, the situation was reviewed but SBA continued to find management deficiencies in his proposal. Robert B. Silikovitz, Assistant District Director for the Finance and Investment Division of SBA in Philadelphia, states by affidavit that he and the District Director, William T. Gennetti, met with Mr. Palmer on September 25, 1979 to explain the reasons for the loan denial and to suggest that Mr. Palmer obtain help in preparing his application from a business development organization. Mr. Silikovitz avers that he called such an organization on Mr. Palmer's behalf, that assistance was available but that Palmer did not utilize this service.

Countering, Palmer attests that, "[a]t no time did any person from Small Business Administration attempt to assist me in the establishment of this business venture or

---

**4.** Exhibit B to Defendants' Supplemental Memorandum; *See*, Affidavit of James P. Guyer, attached to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, asserting those steps taken by SBA to assist Mr. Palmer in curing the deficiency. *See also*, Affidavit of Carole A. Scheck, attached as Exhibit A to Defendants' Motion, that the letter of May 11, 1978 was mailed to Mr. Palmer, and Exhibit D to her Affidavit, attached to Defendants' Supplemental Memorandum, defendants' copy of the letter sent to Mr. Palmer bearing a notation that the letter was returned by Mr. Palmer as an attachment to his letter of May 14, and Exhibit B to same Affidavit, Mr. Palmer's letter of May 14 obviously referring by paragraph number to the SBA letter of May 11 and Affidavit of Harold H. Palmer, Paragraph 7, denying that he received any May letter from SBA other than the letter dated May 6 attached as Exhibit A to the Complaint, which denied the loan application.

**5.** Exhibit A to Plaintiff's Complaint.

**6.** Exhibit A to Affidavit of Lillian Laurence; attachment to Defendants' Supplemental Memorandum.

**7.** *Id. See*, Affidavit of Carole A. Scheck regarding reason for "Committee" vote to decline:

    a) Applicant's equity injection could not be verified.

    b) Applicant was student with no visible source of full-time income.

    c) Applicant's alleged vending experience could not be verified, as no Federal Income Tax forms were filed for the previous four (4) years.

    d) Applicant did not propose a specific site but merely intended to locate within the 'Germantown and Chelten area'.

*Attachment to Defendants' Motion to Dismiss.*

**8.** Affidavit of Robert Silikovitz; Exhibit F to Defendants' Motion to Dismiss stating reasons for decline upon reconsideration:

    a) Lack of reasonable assurance that the business can be operated at a rate of profit sufficient to repay the loan and other obligations from earnings.

    b) Disproportion of loan requested and of debts to tangible net worth before and after the loan.

    c) Gross disproportion between owner's actual investment and loan requested.

Additionally, the reconsideration request reduced the inventory from $25,000.00 to $15,000.00 without supportive cash flow projection modifications to substantiate the ability to achieve the sales needed to sustain the business.

*Exhibit F to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.*

otherwise. When I went to the Service Core of Retired Executives (SCORE), as suggested by SBA, I received no help from anyone."[9]

Mr. Palmer filed a second loan request, in July, 1979. This application, requesting a $22,500 loan, was reviewed by Daniel M. Sossaman who noted several deficiencies.[10] Minority Small Business Representative Henry P. Murphy also reviewed this application and agreed with the decision to decline.[11] This request was declined on August 6, 1979 by Carole A. Scheck, Chief of the Financing Division; her reasons were supplied by affidavit submitted to the court.[12]

In October, 1979, Mr. Palmer filed a third loan application which requested $26,500. Again this request was reviewed by Scheck and Murphy who determined that there were the same credit deficiencies as in previous applications;[13] this request was denied by letter of November 20, 1979.[14]

Plaintiff brings this action under § 2[5](b) of the Small Business Act, 15 U.S.C. § 634(b)(1) which, in relevant part, provides:

(b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—

(1) sue and be sued in ... any United States District Court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process,

**9.** Affidavit of Harold H. Palmer; Exhibit to Plaintiff's Answer to Defendant's Motion to Dismiss.

**10.** The deficiencies noted were:
a) Collateral inadequate to secure the loan. The only collateral applicant showed on SBA Form # 4 was $2,000.00 machinery and equipment. On SBA Form # 4, Schedule A, applicant listed collateral of $2,400.00 consisting of furniture and fixtures, miscellaneous $370.00 and Stereo Equipment of $900.00. $3,000.00 of loan proceeds was requested for machinery and equipment and $13,500.00 for Inventory. Additionally, I adjusted applicant's proforma balance sheet to show his $2,500.00 cash investment used to acquire additional inventory.
Due to the nature of this collateral, I assessed a 50% value for quick sale. Figure was optimistic, since at liquidation this category of collateral would bring a much lesser amount.
b) Lack of reasonable assurance business could be operated at a rate of profit sufficient to repay loan from earnings. Mr. Palmer based the repayment of his loan on a projection/cash flow. The projection/cash flow as submitted did not show that profit could be produced to service proposed debt. This was even after I proposed a six (6) month principal moratorium. Mr. Palmer also did not have a specific business location. After I had visited the site where Mr. Palmer said he was to locate, I called the landlord, Abner Levy. I was told that the site was already rented. I asked Mr. Levy if he had spoken to Mr. Palmer. He did not know.
c) Disproportion of debt to net worth after loan. Mr. Palmer stated he was investing $2,500.00 cash and $2,400.00 machinery and

equipment, furniture and fixtures into the business. His net worth in relation to debt presented a ratio twice that of the upper industry average ratio. A condition which places a greater risk on the lender and a lesser on the borrower. Neither the fixed assets or the cash could be verified. It was noted that apparently Mr. Palmer's cash position had not changed since April 12, 1978 (the date of his original personal financial statement).
Affidavit of Daniel M. Sossaman.

**11.** Exhibit B to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

**12.** Ms. Scheck's reasons for decline are as follows:
a) Applicant's equity injection could not be verified.
b) Applicant was a student with no visible source of full-time income.
c) Applicant's alleged vending experience could not be verified, as no Federal Income Tax forms were filed for the previous four (4) years.
d) Applicant did not propose a specific site but merely intended to locate within the 'Germantown and Chelten area'.
Scheck Affidavit, Exhibit A to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

**13.** Scheck Affidavit, Exhibit A to Defendants' Motion; Murphy Affidavit, Exhibit B to Defendants' Motion.

**14.** Exhibit F to Plaintiff's Complaint.

mesne or final, shall be issued against the Administrator or his property.

■ This provision waives sovereign immunity by allowing the Administrator to be sued and confers jurisdiction on this court to hear such suits. *See, Expedient Services, Inc. v. Weaver,* 614 F.2d 56 (5th Cir. 1980). Section 634, however, by its own terms, denies district courts the authority to enjoin the SBA Administrator. ("no . . . injunction . . . shall be issued against the Administrator or his property.") Federal courts have consistently held that this provision precludes the issuance of an injunction against the Administrator because the court has no subject matter jurisdiction and therefore no power to order such relief. *E. g., Expedient Services, Inc., supra; Mar v. Kleppe,* 520 F.2d 867 (10th Cir. 1975); *Little v. United States,* 489 F.Supp. 1012 (C.D.Ill. 1980); *Copake Lake Development Corp. v. United States,* 490 F.Supp. 386 (E.D.N.Y. 1980); *Murray v. Kleppe,* 424 F.Supp. 108 (M.D.Pa.1977).[15]

■ Plaintiff seeks, in part, injunctive relief to remedy the alleged unlawful denials of his loan applications. The complaint prays that the court "[e]nter a final judgment ordering the defendant to process a new loan application request to be submitted by plaintiff and to give said application the consideration required by law. . . ." Plaintiff is clearly asking for a mandatory injunction by the terms of his request for relief. Because the statute upon which plaintiff bases jurisdiction expressly precludes such relief, as do the cases construing that statutory provision, plaintiff's complaint insofar as it seeks injunctive relief must be dismissed.

But plaintiff also requests relief declaring that defendants failed to give plaintiff's loan application request the consideration required by law in violation of the Small Business Act and awarding money damages of $50,000 [16] together with fees and costs of the action.

■ Where an action framed by plaintiff as one for declaratory relief under § 634(b)(1) is equivalent to the injunctive relief barred by the statute, it has been dismissed. *See, Expedient Services, Inc. v. Weaver,* 614 F.2d 56 (5th Cir. 1980) (plaintiff's request to have the agency decision set aside was essentially a request for an injunction preventing the agency from continuing to enforce its decision); *Copake Lake Development Corp. v. United States,* 490 F.Supp. 386, 390 (E.D.N.Y.1980) (where "heart of the action" was plaintiff's claim for a loan in an increased amount, there was no subject matter jurisdiction).

■ However, the instant case is not a demand for an injunction disguised as a prayer for declaratory relief but is a true request for declaratory relief and damages. Section 636(b), consenting to suits against the Small Business Administrator, neither excepts declaratory relief nor actions for money damages. Several cases have upheld plaintiffs' right to bring suit against the Administrator for declaratory relief. *E. g., Mar v. Kleppe,* 520 F.2d 867 (10th Cir. 1975); *Little v. United States,* 489 F.Supp. 1012 (C.D.Ill.1980); *S.C.L.C. v. Connolly,* 331 F.Supp. 940 (E.D.Mich.1971); *Pottharst v. SBA,* 329 F.Supp. 1142 (E.D.La.1971); *American Electric v. United States,* 270 F.Supp. 689 (D.Haw.1967); *but see, Murray v. Kleppe,* 424 F.Supp. 108 (M.D.Pa.1977) (Court finds no jurisdiction under

---

**15.** A few decisions indicate that injunctive relief against the Administrator may be available if the Administrator exceeds his authority. *See, Valley Forge Flag Co., Inc. v. Kleppe,* 506 F.2d 243, 245 (D.C.Cir.1974); *Ricks v. United States,* 434 F.Supp. 1262, 1272 (S.D.Ga.1976); *Dubrow v. Small Business Administration,* 345 F.Supp. 4, 7 (C.D.Cal.1972).

**16.** After plaintiff's counsel withdrew at plaintiff's request, plaintiff submitted an amended complaint. This amendment was submitted without motion for leave to amend as required by Fed.R.Civ.P. 15(a) and after defendant had moved for summary judgment. Ordinarily such an amendment would not be considered. *Carey v. Beans,* 500 F.Supp. 580 (E.D.Pa.1980). However, in this case, plaintiff's amendment modifies the original complaint only by increasing the dollar demand from $50,000 to $5,000,-000. Because plaintiff is now proceeding *pro se,* the court also considered his complaint as amended in ruling on defendants' motion.

§ 634(b)(1) to provide injunctive or "other similar relief;" plaintiff's action for declaratory relief dismissed).

The right to bring an action for money damages against the Administrator has been repeatedly upheld. *E. g., Mar v. Kleppe, supra* (money damages claimed for alleged SBA breach of an oral agreement with lease guarantors); *Romeo v. United States,* 462 F.2d 1036 (5th Cir. 1972) (money damages claimed where SBA rescinded plaintiff's disaster loan); *Little v. United States, supra* (money damages sought where SBA allegedly improperly denied plaintiff's applications for certification in minority business program); *Raitport v. Small Business Administration,* 380 F.Supp. 1059 (E.D.Pa.1974) (money damages sought where SBA denied plaintiff's loan application in allegedly arbitrary and discriminatory fashion); *Simpkins v. Davidson,* 302 F.Supp. 456 (S.D.N.Y.1969) (money damages sought where SBA refused to make loan to plaintiff, a small businessman).

■ Therefore, this court has jurisdiction to consider plaintiff's claims for declaratory relief and money damages. But the applicable standard of review of a loan denial by SBA, clearly and consistently applied by the courts, is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The cases rely upon the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* on the ground that it is the APA which gives plaintiff standing to seek judicial review of an SBA decision. For example, in *Little v. United States,* 489 F.Supp. 1012

(C.D.Ill.1980), the court found the scope of review that of APA (§ 706(2)(A)) [17] where plaintiff had exhausted his remedies within the agency, and where the agency discretion exception to judicial review did not apply.[18]

In *Raitport v. Small Business Administration,* 380 F.Supp. 1059, 1060 (E.D.Pa.1974), a case factually similar to the instant matter, the court stated:

The law has been clearly established that a court can review any SBA decision only if it is arbitrary, capricious or erroneous as a matter of law.

Although *Raitport* did not state that it was relying on the APA for its enunciated standard, the cases cited in support thereof do rely upon the APA. *See, Lloyd Wood Construction Company v. Sandoval,* 318 F.Supp. 1167 (N.D.Ala.1970); *American Electric Company v. United States,* 270 F.Supp. 689 (D.Haw.1967). The *Raitport* standard was reiterated in *Monter v. United States,* 440 F.Supp. 44 (M.D.Pa.1977), *aff'd,* 586 F.2d 835 (3d Cir. 1978) (without opinion); the court, finding that the Administrator had not abused the broad discretion afforded him by statute in denying plaintiff's application for mortgage refinancing, refused further review of the agency action under the APA. *See, Capital Refrigeration Inc. v. United States,* 375 F.Supp. 462 (M.D.Pa. 1973); *Copake Lake Development Corp. v. United States,* 490 F.Supp. 386 (E.D.N.Y. 1980) (decisions regarding loanworthiness are left to sound discretion of SBA and are unreviewable under the agency discretion exception to court review under the APA).[19]

17. The APA, 5 U.S.C. § 706, in relevant part provides:

§ 706. Scope of Review
. . . The reviewing court shall—. . .
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

18. The agency discretion exception is very narrow, applying only when a statute is drawn in such broad terms that in a given case there is no law to apply. The Little court found that the Small Business Act provided relevant law

for the court to apply in reviewing agency action in that case.

19. We have not been asked to nor do we find the agency action here totally unreviewable under the narrow agency discretion exception to judicial review under APA § 701(A)(2). *Accord, Little v. United States,* 489 F.Supp. 1012 (C.D.Ill.1980) (see fnt. 18 above). But if there is no arbitrary or capricious action or abuse of the Administrator's discretion, the court is precluded from reviewing the disputed agency action under APA § 706(2).

Exhaustion requirements under the APA have been met; the denial of plaintiff's loan applications was final and there is no claim

The issue directly before the court, as on any motion for summary judgment is whether, applying the standard applicable to review of SBA decisions, the materials before the court present a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The moving party has the burden of clearly establishing both of these conditions. All inferences to be drawn from the facts contained in the affidavits and exhibits thereto must be drawn in favor of the party opposing the motion.

The plaintiff argues that material issues of fact preclude summary judgment in this case: whether a deficiency letter was sent to plaintiff; the date of the SBA's first rejection letter; and plaintiff's proposed site. However, the court finds that there are no genuine issues of fact which require a trial. Even if the deficiency letter of May 11, 1978 had not been sent, such an omission would not be unlawful because the SBA regulations do not require the agency to send a deficiency notice prior to declining a loan application. If the initial decline of the loan occurred on May 6, 1978 as plaintiff contends, the uncontradicted facts of record demonstrate that it was supported by adequate reasons and was not arbitrary.

The disagreement regarding plaintiff's choice of a site seems more a problem of semantics than an actual dispute as to facts. Plaintiff had particular areas of the city in mind and had identified a specific intersection. An SBA employee avers that he accompanied plaintiff to view a suggested site but thereafter the landlord stated the site had already been rented to another party.[20] The Assistant Director for Minority Small Business also avers that, as of plaintiff's third loan application, a business site had still not been identified although he visited potential sites with Mr. Palmer on October 19, 1979.[21] Palmer acknowledges by affidavit that one of his potential sites was leased to another and that he was told by SBA that a lease was necessary prior to the granting of a loan.[22] Therefore, it is not disputed that plaintiff had not rented a building nor had he provided the SBA with evidence that a landlord had granted or offered a lease. This is apparently what the defendants mean when they say plaintiff had no specific site. Accepting that plaintiff did in fact have a site in mind, he had not complied with a valid prerequisite for an SBA loan.

Defendants complied with all the requirements of the law as required by the Small Business Act, 15 U.S.C. § 636(a)(7), and pertinent SBA regulations establishing criteria for direct loans, 13 C.F.R. § 119–122 (1978). The Small Business Act requires: "All loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(7).

Pertinent regulations relied on by the plaintiff[23] state:

§ 119.2 Program objectives.

(a) The principal purpose of the Economic Opportunity Loan Program is to make funds available on reasonable terms and maturities to small business concerns located in areas with high proportions of unemployment or low-income individuals, or small business concerns owned by or to be established by persons with low incomes; and to provide management assistance to such persons. . . .

that further remedies are available which plaintiff is required to exhaust prior to court review of the SBA decision.

20. Sossaman Affidavit, Exhibit D to Defendants' Motion to Dismiss.

21. Exhibit B to Defendants' Motion to Dismiss, or in the Alternative, or Summary Judgment.

22. Palmer Affidavit, attachment to Plaintiff's Answer.

23. Defendants rely on regulations at 13 C.F.R. § 120.2(c)(1) 1978 as to Business Loan Policy. These regulations are made applicable to Economic Opportunity Loans except where inconsistent with the specific provisions of § 119; see, 13 C.F.R. § 119.21. We have considered the regulations relied on by plaintiff as applicable because defendants' motion must be granted even under that standard.

(c) Although certain of the credit standards used in the regular business loan program have been modified for the economic opportunity loan program, *there must be a reasonable assurance of repayment.* . . .

§ 119.51   Credit requirements.

*An application must meet certain practical credit requirements established by SBA.* Principal requirements are as follows: . . .

(b) *There must be evidence of ability to operate the business successfully.* When, in the opinion of SBA, an applicant requires management assistance to attain, supplement or improve such ability, SBA may require that the applicant accept such management assistance as SBA may prescribe, as a condition of the loan.

(c) As required by the Act, *there must be reasonable assurance of repayment of the loan.*

(d) *There must be evidence that the loan proceeds, together with other funds available to the applicant, are adequate to assure completion or achievement of the purposes for the loan.*

§ 119.61   Application procedure. . . .

(c) After a direct loan application has been submitted to SBA and has been approved or declined, the regional or district officer will send a letter of notification to the applicant. In cases of decline, the reasons will be stated. . . . (Emphasis supplied).

■ On the undisputed facts of this case, and where disputed, plaintiff's contentions as to the facts, the court holds that the SBA's decisions to deny plaintiff's loan requests were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The decisions were not in excess of statutory authority or without observance of procedure required by law. The SBA affidavits demonstrate that plaintiff's applications were given careful review, that the SBA considered appropriate criteria of loanworthiness, and that adequate reasons for the denial were communicated to the plaintiff. The affidavits submitted by the SBA employees responsible for the denial of plaintiff's loan application demonstrate that the decision makers were familiar with the applicable regulations. Those factors taken into account in arriving at the decision were lawful and proper considerations as reflected in those regulations. *See, Little v. United States,* 489 F.Supp. at 1018. The SBA's denial rested upon specific factors relevant to this particular applicant and the plaintiff has been unable to point to any material factual errors in the SBA's findings.

Upon searching and careful review of all the material presented to this court, we find that the SBA's factfinding procedures were adequate, and that the record before us supports the SBA determination.[24] On this record we find no "clear error of judgment," *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), on the part of the SBA. Mindful that we are not empowered to substitute our judgment for that of the SBA, we find upon a record sufficient to make the necessary determinations that the SBA denials of plaintiff's loan applications were neither arbitrary nor unlawful.

Plaintiff's conclusory allegation that he "believes" the SBA has discriminated against him because he is black[25] is not supported by specific facts; *see,* Fed.R. Civ.P. 56(e); *Liotta v. National Forge Company,* 629 F.2d 903 (3d Cir. 1980); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141 (3d Cir. 1972) (conclusory statements . . . and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment), and does not preclude summary judgment here. *See, Carey v. Beans,* 500 F.Supp. 580 (E.D.Pa. 1980) (Affidavits speculating as to motiva-

---

24. The exhaustive record before this court included all loan applications of Harold H. Palmer to the SBA, all other correspondence from Mr. Palmer to the SBA, all correspondence from the SBA to Mr. Palmer, Affidavits of SBA employees and Affidavits of Mr. Palmer.

25. Palmer Affidavit, attachment to Plaintiff's Answer.

tions but containing no factual support do not conform to the requirements of Rule 56. The phrase "I believe" ... is properly subject to a motion to strike.).

Defendants' Motion will be granted.