**Johnny WILLIAMS, on behalf of himself and other persons similarly situated, Plaintiff,**

**v.**

**DeKALB COUNTY, A political subdivision of the State of Georgia, Clark Harrison, Chairman, DeKalb County Board of Commissioners, A. C. Guhl, Thomas M. Calloway, Jr., Hoke Clayton Smith, William Evans, William M. Coolidge, Jr., Horis A. Ward, Members of the Board of Commissioners, DeKalb County, William J. Humma, Director, DeKalb County Department of Sanitation, W. H. Bedford, Superintendent of Residential Collections, DeKalb County Department of Sanitation and Their Successors in Office, Defendants.**

**Civ. A. No. 17522.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Jan. 23, 1979.

Fletcher Farrington, Savannah, Ga., for plaintiff.

George P. Dillard, William F. Rucker, Herbert O. Edwards, Decatur, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This employment discrimination action, brought pursuant to 42 U.S.C. § 1981, alleg-es racial discrimination in the hiring, job assignment, promotion and discharge practices of the DeKalb County, Georgia Sanitation Department. A trial, held on December 15, 1975, resulted in the issuance of findings of fact and conclusions of law holding that the plaintiff and the class he represents were not entitled to relief. This decision was confirmed pursuant to plaintiffs' motion for reconsideration on May 17, 1976. The decision was appealed and on July 27, 1978, the Fifth Circuit Court of Appeals reversed the decision of this Court and remanded the action for further proceedings. *Williams v. DeKalb County*, 577 F.2d 248 (5th Cir. 1978) [hereinafter "*Williams I*"]. Upon motion for rehearing the Court of Appeals vacated a portion of its earlier decision and altered its original holding. *Williams v. DeKalb County*, 582 F.2d 2 (5th Cir. 1978) [hereinafter "*Williams II*"]. The case is now before the Court on the plaintiff's motion for partial summary judgment as well as for any other proceedings consistent with the decisions of the Fifth Circuit.

In its order of December 15, 1975, the court found that Williams had met his initial burden of making out a prima facie case of racial discrimination in his discharge. That conclusion was based on statistical evidence indicating a total absence of blacks above the supervisory level attained by the plaintiff. In its earlier order this court held that defendants also met their burden of showing that Williams' discharge was not motivated by his application for promotion to a position previously occupied by whites only. The court held that Williams was discharged because he failed to comply with his supervisor's orders and he was not "a first time offender". On appeal these factual determinations were reversed, pursuant to Fed.R.Civ.P. 52(a), as clearly erroneous. *Williams I*, 577 F.2d at 253. As a result of the reversal of the district court's factual findings the appeals court held that the defendants had been unable to meet their burden of proof. The appeals court then rendered judgment for the plaintiff on his discharge claim.

In *Williams I*, the appeals court also reversed the district court's conclusion that DeKalb County's adoption of an affirmative action program in 1974 rebutted the plaintiff's prima facie case of classwide discrimination in promotions and job assignment. Citing *Rice v. Gates Rubber Co.*, 521 F.2d 782 (6th Cir. 1975), the Fifth Circuit ruled that the adoption of an affirmative action program is irrelevant to the issue of discrimination vel non at an earlier date. *Williams I*, 577 F.2d at 256. The court ordered that as a result of defendants' failure to rebut the prima facie case of racial discrimination in job assignments and promotions within the Sanitation Department, judgment must be entered for the plaintiff class. Further the district court was ordered to determine the individual class members' entitlement to back pay and the appropriateness of injunctive relief in light of the County's affirmative action program.

Finally, the court in *Williams I* ordered the district court to determine whether certain irregularities in the procedures surrounding Williams' applications for promotion resulted from racial discrimination. Because of the need for additional fact finding, the appeals court did not order that judgment be entered for Williams on these claims.

In *Williams II*, the Fifth Circuit reconsidered their earlier holding. While *Williams I* expressly denied the applicability of *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) to the present facts, *Williams I*, 577 F.2d at 257 n. 5, the court in *Williams II* held that the criteria for a prima facie case stated in *Davis* must be satisfied.

In *Davis*, the Supreme Court held that the racially disproportionate impact of an employment practice neutral on its face is insufficient, standing alone, to establish racial discrimination violative of the equal protection component of the Fifth Amendment Due Process Clause. The Court indicated that proof of racially discriminatory intent or purpose is required to show a Constitutional violation. *Davis*, 426 U.S. at 240, 96 S.Ct. 2040. The question which

presented such difficulty for the Fifth Circuit was whether the standard to be applied in an action maintained under 42 U.S.C. § 1981 was that applied to claims proceeding under a constitutional provision or that applied to claims proceeding under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The former required proof of a discriminatory purpose while in the latter a prima facie case could be established by proof of discriminatory impact alone. See, *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

In *Nevett v. Sides*, 571 F.2d 209 (5th Cir. 1978), the Fifth Circuit applied *Davis* to an action alleging racially based voting dilution in violation of the Fourteenth and Fifteenth Amendments of the Constitution. Although *Nevett* dealt with violations of a constitutional stature it was brought pursuant to 42 U.S.C. §§ 1981 and 1983. *Williams II* represents the first time that the Fifth Circuit has applied *Davis* in an action based solely on statutory violations. The *Williams II* holding makes clear that, "the named plaintiff and the class must make a showing of purposeful discrimination before casting the burden on the defendant to rebut the charge; . . . a claim under § 1981 is, for this purpose, to be equated with a claim under the Fourteenth Amendment, dealt with by the court in *[Davis]* rather than under Title VII of the Equal Employment Opportunity Act." *Williams II*, 582 F.2d at 2–3.

In considering *Williams I* in light of *Williams II*, it is clear that the question of whether the named plaintiff and the class have established a prima facie case of racial discrimination has not been answered. Orders that judgment be entered in favor of Williams and the class must be considered vacated by the holding of *Williams II*. This court must now make a new determination as to whether or not a prima facie case has been established. We therefore turn to the issue of whether such a determination will require additional fact finding procedures or may be made in the context of plaintiff's motion for summary judgment.

In support of his motion for partial summary judgment the plaintiff contends that he has already shown the defendants' discriminatory purpose and thus satisfied the requirements of *Davis*. The plaintiff argues that a prima facie case of discrimination is established where the intended result of a conscious act discriminates on the basis of race. The plaintiff contends that he has proven he was fired because of his desire for promotion to a job not previously held by blacks. The court does not agree.

■ In *Williams I*, the appeals court upheld the district court's ruling that the plaintiff had established his prima facie case based on statistical evidence showing the impact of the allegedly discriminatory policies of the Sanitation Department. The plaintiff did not show that his firing was racially motivated in order to prevent his advancement. Though related, a finding of discriminatory impact does not equate to a finding of discriminatory purpose. Sometimes, a pattern so clear emerges from the effect of a party's conduct that it is unexplainable on grounds other than race. See, *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Guinn v. United States*, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340 (1915); *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). "Absent a pattern as stark as that in *Gomillion* or *Yick Wo*, impact alone is not determinative, and the Court must look to other evidence." *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). In Judge Clark's special concurring opinion in *Williams I*, he wrote that, "*Davis* precludes a plaintiff from making out a prima facie case of discrimination in violation of his right to equal protection of the law by statistical evidence alone". *Williams I*, 577 F.2d at 257. The court in *Williams II* expressly agreed with Judge Clark's special concurring opinion. This Court will not make such a difficult determination, which requires a sensitivity for the subtleties of the evidence, on a motion for summary judgment.

■ Additionally, the defendants must now be given an opportunity to rebut the new prima facie case plaintiff may establish. In *Williams I*, the court held that, "In order to rebut Williams' prima facie case, the defendants should have shown by comparative evidence that the sanction of discharge meted out to Williams was no harsher than the treatment of white employees". *Williams I*, 577 F.2d at 253. However, this comparative evidence was meant to rebut plaintiff's statistical evidence of discriminatory impact. It would appear that the defendants could now rebut plaintiffs' prima facie case by showing a valid reason for Williams' discharge. Evidence of this nature would tend to negate a showing that a discriminatory purpose motivated plaintiff's discharge. In consideration of the standard adopted by the Fifth Circuit in *Williams II*, this opportunity should not be denied the defendant by determining the issue on a summary judgment motion.

■ The court is well aware of the difficulty facing the plaintiff. The Supreme Court has given some guidance as to the evidence needed to show discriminatory purpose. In *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555 (1977), the Court noted four factors providing valid evidentiary considerations: (1) the historical background of the decision (2) the specific sequence of events leading up to the challenged decision (3) departures from the normal procedural sequence and (4) departures from the substantive factors normally considered important. This list is not exhaustive but merely instructive as to subjects of proper inquiry in determining whether racially discriminatory intent existed.

■ The reasoning outlined above also pertains to those claims of the plaintiff class on which the *Williams I* Court rendered judgment. The class will now be required to prove discriminatory intent in order to establish its prima facie case. Any future proceedings will consider these claims as well as those of the individual plaintiff. Further inquiry will be made into irregularities surrounding Williams' three applications for promotions as well.

The parties will be granted 30 days from the filing of this order to conduct additional discovery. If more time is needed the parties may apply to the court for an extension. At the end of this discovery period the parties may approach the court for the scheduling of a hearing.

Accordingly, plaintiff's motion for partial summary judgment is DENIED. The parties are granted 30 days in which to conduct discovery. At the end of the discovery period a hearing will be scheduled.

SO ORDERED, this the 23rd day of January, 1979.