Sammy L. **LEONARD,**
Plaintiff-Appellant,

v.

**CITY OF FRANKFORT ELECTRIC AND WATER PLANT BOARD,**
Defendant-Appellee.

No. 83–5767.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1984.
Decided Jan. 9, 1985.

Fredric J. Cowden (argued), Louisville, Ky., for plaintiff-appellant.

Sammy L. Leonard, pro se.

Marion Rider (argued), Charles L. Hobson, Frankfort, Ky., for defendant-appellee.

Before EDWARDS and CONTIE, Circuit Judges; and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Plaintiff-Appellant, Sammy L. Leonard (Leonard), seeks review of the district

court's judgment for the Defendant-Appellee, Electric and Water Plant Board of Frankfort, Kentucky (Board) in his civil rights action alleging employment discrimination under 42 U.S.C. § 1981[1] and 42 U.S.C. § 2000e–1–17 (Title VII).[2] Leonard seeks reversal of the district court's decision granting summary judgment for the Board with respect to all of Leonard's § 1981 claims and his claim of discriminatory discharge under Title VII and § 1981. We reverse the district court's summary disposition of these claims and remand them to afford Leonard the opportunity to prove that the Board's actions were unlawful. Leonard also seeks reversal of the district court's damage award on the Title VII claims which were tried. We find this award unobjectionable but believe that Leonard may have the opportunity to prove additional damages on the remanded claims if he is able to do so.

## I.

Leonard was employed by the Board as a utility man in its water department on December 8, 1968. He was transferred to the electric department in 1969 and remained there until May of 1970, when he was granted a leave of absence to receive training as an electric lineman in Texas. He returned from this program in November of that year and was promoted to third-class lineman, where he worked until September, 1971, when he received severe injuries after falling 43 feet from a utility pole because his climbing gear had been tampered with.[3] He returned to work in December, 1971, and since his doctor had ordered that he perform only light work, he was put to work in the meter department. Just two months later he was transferred back to the line crew as a third-class lineman in the crew which performed the heaviest work in the company. This transfer occurred despite Leonard's request to be put with another, less strenuous crew because he had not totally recuperated from his injuries. Ten days after the transfer, Leonard was reinjured while pulling heavy equipment. The district court found that the Board had failed to sufficiently explain the reason for this transfer and that the circumstances suggested an undertaking to force Leonard to leave his job with the Board.[4] In May of 1972, Leonard was demoted from third-class lineman to utility man, where he remained until he was discharged on April 15, 1974.

The circumstances surrounding Leonard's discharge were not developed at trial because of the pretrial dismissal of the discharge claims and thus, are not entirely clear. In dismissing this claim, the district court relied on Leonard's deposition testimony, stating that he was discharged be-

1. 42 U.S.C. § 1981 was enacted as § 1 of the Civil Rights Act of 1866, 14 Stat. 27, and provides:

 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

2. Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e–1–17, generally provides for equal employment opportunities. Title VII became applicable to municipalities and their agencies in March, 1972. *See e.g., Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

3. Leonard testified that his climbing hooks gave way while climbing a utility pole and that upon examining his gear, he discovered that the straps had been cut. Leonard then displayed the gear to his foreman, assistant superintendent, and superintendent, requesting an investigation. After some time had passed, Leonard inquired about this requested investigation, to which his assistant superintendent responded that he did not know or care about any investigation and he added, "Kill a mule, buy another; kill a nigger, hire another".

4. The Board suggested that Leonard was transferred because of a near fatal accident which occurred while he was stationed in the meter department. Leonard denied that this occurred and the district court rejected the Board's proffered reason. Leonard testified that he was informed that he was being transferred to the construction crew because, according to his assistant superintendent, "We don't have any light duty for niggers".

cause he threw his headgear at his supervisor. After the deposition and prior to summary judgment, Leonard filed an affidavit stating, among other things, that the incident which resulted in his termination was the result of years of past discriminatory treatment which he had endured.[5]

## II.

In August of 1974, Leonard filed a charge of discrimination against the Board with the Equal Employment Opportunity Commission (EEOC).[6] Leonard charged that the Board had failed to promote him, demoted him, discharged him, and subjected him to discriminatory terms and conditions of employment on account of his race. Leonard further charged that he had protested these actions but the Board failed to take corrective action. After investigating these charges, the EEOC found probable cause existed to believe the Board had discriminated against Leonard.[7] Leonard obtained a Right to Sue Letter on October 27, 1978, and on January 24, 1979, this action was filed, seeking damages under the Civil Rights Act of 1866, 42 U.S.C. § 1981, relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and attorneys fees. Leonard reiterated his allegations that the Board had failed to promote him, demoted him, discharged him, and subjected him to unlawful terms and conditions of employment on account of his race.

On December 19, 1979, the United States District Court for the Eastern District of Kentucky, Judge H. David Hermansdorfer, granted the Board's motion for summary judgment with respect to the alleged § 1981 violations, stating that Leonard had failed to allege invidious racial motivation on the part of the Board, a local governmental agency. The district court also granted summary judgment dismissing Leonard's claims of discriminatory discharge, claiming that Leonard's deposition testimony conclusively rebutted his allegation that his discharge was unlawful.

On May 10, 1982, the remaining Title VII claims were tried to the court, Judge Scott Reed presiding. All of Leonard's claims were dismissed except those alleging discriminatory working conditions and promotional practices. Regarding the promotional practices, Leonard's demotion was held to be unlawful since the Board's promotional standards were highly subjective and based solely on the recommendations of certain supervisors who had discriminated against Leonard. Leonard was awarded back pay on this claim to the extent of the

---

5. Leonard's deposition testimony, relied on by the court, reveals more than an unambiguous admission that Leonard was fired because of the headgear incident. The facts leading up to this conduct were explained by Leonard, roughly as follows. A tornado had precipitated a severe power outage which called for several crews, working day and night, to locate the problem power lines. Leonard testified that he had discovered one such trouble spot and reported it to his supervisor, but this report was ignored and the crew continued searching for some four hours. After this time, Leonard claimed that the supervisor returned to the spot that Leonard had originally indicated and called the superintendent, reporting that he had sent Leonard up that line hours ago but that Leonard had reported he found no problems. The supervisor was across the road from Leonard while making the call and after it was completed, he related the call to Leonard, accompanied by racially derogatory language. Leonard became angry and threw his headgear across the road in the direction of the supervisor or his truck. Leonard was fired two days later, upon the recommendation of this supervisor.

6. Leonard originally filed a charge of discrimination against the Board with the Kentucky Human Rights Commission in February of 1972. The agency dismissed the charge in August, 1974, finding that no probable cause existed to substantiate the charges. In February, 1973, Leonard filed a series of grievances with the Board, asserting that he was discriminated against. These complaints were denied on April 10, 1973.

7. The EEOC stated in part:

Title VII requires an employer to maintain a working environment free of racial intimidation. That requirement includes positive action where positive action is necessary to redress or eliminate intimidation. Here, the record clearly shows that Respondent had knowledge of the racial harassment to which the Charging Party was being subjected and rather than coming to the aid of the victim, accomodated the wrongdoers by demoting him, failing to promote him, and discharging him, an obvious violation of Title VII.

wage differential between his positions before and after his demotion for the number of days he had worked until his discharge. Leonard did not recover damages for the discriminatory working conditions, the court noting that such relief would be in the nature of compensatory damages, not recoverable under Title VII.

## III.

### A.

Leonard first asserts that his complaint set forth sufficient allegations of discriminatory intent or motive on the part of the Board to state a § 1981 claim against a local governmental agency and that the district court's dismissal of these claims on summary judgment was erroneous. We agree and remand Leonard's § 1981 claims so that he may be afforded the opportunity to prove the requisite intent on the part of the Board.

In civil rights actions, pleadings are to be liberally construed and a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir.1972). In order to successfully assert a claim of discrimination under § 1981 a claimant must demonstrate that the defendant engaged in purposeful or intentional discrimination. *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). This intent requirement may be satisfied by direct allegations and proof of invidious discriminatory animus or circumstantially demonstrated by alleging and proving discriminatory conduct, practices, or the existence of significant racially disproportionate impact. *Little v. United States*, 489 F.Supp. 1012 (C.D.Ill.1980), *aff'd*, 645 F.2d 77 (7th Cir.1981). In *Little*, the district court for the Central District of Illinois appropriately observed:

> [I]t is the exceptional case where there is clear, direct evidence of racial animus, and ... in the typical case the discriminatory racial purpose must be divined from inferences and implications arising out of circumstantial evidence. 489 F.Supp. 1024.

Thus, where a complaint alleges facts evidencing such a discriminatory purpose or intent, although it fails to specifically allege a discriminatory purpose, it is sufficient to state a claim under § 1981. *Newson v. American Greetings Corp.*, 535 F.Supp. 1389 (N.D.Ohio 1982); *see also Long v. Ford Motor Company*, 496 F.2d 500 (6th Cir.1974) (plaintiff alleging § 1981 violation must establish that his employment terms vary from those employer accords similarly situated whites); *Hudson v. Teamsters Local Union No. 957*, 536 F.Supp. 1138 (S.D.Ohio 1982) (complaint alleging employee was treated differently than other workers on account of his race sufficiently implied requisite intent under § 1981). In addition, where a substantial issue of fact remains as to whether an employer's intent or motive was discriminatory as required under § 1981, summary judgment is precluded. *Byrd v. Roadway Express Inc.*, 687 F.2d 85 (5th Cir.1982); *Williams v. DeKalb County*, 82 F.R.D. 10 (N.D.Ga.1979).

Leonard's complaint named several defendants, including the City of Frankfort, several of his supervisors and the Board. All defendants except the Board were dismissed prior to the Board's motion for summary judgment. The complaint alleged that the defendants subjected Leonard to racial insults, failed to promote him, demoted him, and discharged him on account of his race and that these actions were protested but the Board had failed to take corrective action. Leonard further alleged that the Board's policies and practices resulted in the deprivation of his right to equal employment opportunity. The Board answered that any actions which may have occurred were not the result of its policy or direction. In his deposition, Leonard maintained that the discriminatory acts directed

at him "reflected back on the Board" because it was "in charge" and responsible for ruling on all promotions, demotions and complaints.

 On this basis the district court dismissed Leonard's § 1981 claims for failing to allege the requisite intent on the part of the Board. We disagree with the district court's dismissal. The issue of the Board's intent or motive was clearly raised by the pleadings and Leonard's deposition and represented an unresolved issue of material fact which was improper for disposition on summary judgment. Fed.R.Civ.P. 56(c); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Cf. Gill v. Monroe County Department of Social Services,* 79 F.R.D. 316 (W.D.N.Y.1978) (complaint generally alleging various types of discrimination by all defendants and specifically alleging certain state officials were responsible for establishing standards for evaluation, transfer, termination, and promotion was sufficient to survive officials motion to dismiss for lack of allegations of personal wrongdoing). This is especially true since questions of intent or motive are particularly ill-suited for disposition on summary judgment. *Smith v. Hudson,* 600 F.2d 60, 66 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *see also Conrad v. Delta Airlines Inc.,* 494 F.2d 914 (7th Cir. 1974). In addition, we disagree with the district court's position that the intent issue should be determined by the fact that the Board was a local governmental agency [8] since, even if municipal immunity applied, it would not preclude § 1981 liability for the Board's intentional discrimination.[9]

---

8. The Board is an agency of the City of Frankfort, Kentucky, existing and created under Ky. Rev.Stat.Ann. § 96.172 (Baldwin 1984).

9. In *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities are not entirely immune from liability under § 1983, overturning the Court's previous position which had been enunciated in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The *Monell* Court did hold, however, that the doctrine of *respondeat superior* was inapplicable to attribute a municipality with the deprivational conduct of its agents for purposes of § 1983 liability. 436 U.S. at 690–691, 98 S.Ct. at 2035–2036. The district court in this case maintained that this *Monell* principle applied to § 1981 claims and that Leonard, although alleging discriminatory purpose on the part of his supervisors, failed to allege such purpose on the part of the Board, a local governmental agency which could not be responsible for the civil rights violations of its agents. In support of its application of *Monell* to claims brought pursuant to § 1981, the district court cited pre-*Monell* authority to the effect that municipalities are not vicariously liable for the civil rights violations of their agents in general. *See Himes v. D'Artois,* 383 F.Supp. 184 (W.D.La.1974), *rev'd on other grounds,* 531 F.2d 726 (1976); *Miller v. Saxbe,* 403 F.Supp. 1314 (D.D.C.1975); *Boyden v. Troken,* 352 F.Supp. 722 (N.D.Ill.1973).

At least one pre-*Monell* decision held, however, that municipalities may be liable under § 1981 for the constitutionally infirm conduct of their agents. *Mahone v. Waddle,* 564 F.2d 1018 (3rd Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978) (City may be vicariously liable under § 1981 for deprivational conduct of its police officers). This line of reasoning has also been applied in several § 1981 cases decided after *Monell. See Bell v. City of Milwaukee,* 536 F.Supp. 462, 474 (E.D. Wis.1982) (municipal § 1981 liability not limited to responsibility for agents' acts done pursuant to policies, practices, custom or usage); *Haugabrook v. City of Chicago,* 545 F.Supp. 276 (N.D.Ill.1982) (municipality may be liable under § 1981 on theory of respondeat superior); *Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers,* 469 F.Supp. 329, 401–413 (E.D.Pa.1978), *rev'd on other grounds, sub. nom. General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (*Monell's* rejection of *respondeat superior* in § 1983 claims against municipalities has no bearing on § 1981 claims such as this employment discrimination suit); *see also Jones v. City of Philadelphia,* 491 F.Supp. 284, 288 and n. 5 (E.D.Pa.1980); *Croswell v. O'Hara,* 443 F.Supp. 895, 898 (E.D.Pa. 1978).

Thus, although we hold that Leonard sufficiently alleged discriminatory intent on the part of the Board, as opposed to only its agents, so that his § 1981 claims should be addressed, we note that the district court's reasoning was deficient in relying solely on *Monell,* since post-*Monell* § 1981 decisions clearly reject this approach. For a discussion of the differences in the two statutes with respect to vicarious liability see, for example, *Haugabrook,* 545 F.Supp. 276, 279–281 (N.D.Ill.1982).

### B.

■ Leonard also challenges the district court's summary judgment with respect to his claims of discriminatory discharge under Title VII and § 1981 since the Board's reason for firing Leonard was an unresolved issue of material fact. We agree and reverse the decision of the district court with respect to these claims and remand them so that Leonard may be provided the opportunity to prove that his discharge was unlawful.

The district court found that Leonard had conclusively rebutted his allegation of discriminatory discharge by stating, at one point in his deposition, that he was fired because he had thrown his headgear at his supervisor. This conclusion, however, ignores the possibility that the Board seized upon this instance of insubordination to fire Leonard because he was black or the possibility that the actions inducing Leonard's conduct were in themselves discriminatory. In this regard, the Tenth Circuit noted that to satisfy a prima facie showing it is necessary, once the defendant states that plaintiff's insubordination was the cause of his discharge, for the plaintiff to refute this assertion by showing "either that the insubordination was a pretext for the company's real reason for firing ... [him], that ... [he] had been the victim of disparate treatment, or that the discriminatory actions of the company induced ... [his] insubordination". *Nulf v. International Paper Company*, 656 F.2d 553, 559 (10th Cir.1981); *see also Miller v. WLFI Radio, Inc.*, 687 F.2d 136 (6th Cir.1982) (disparate treatment proof consists of showing prima facie discrimination plus evidence that employer's proffered reason for firing is unworthy of credence).

In this case, Leonard articulated what may have been a pretextual reason for his termination. Further, in his post-deposition affidavit, Leonard asserted that the circumstances surrounding his discharge resulted from years of discrimination which he had endured. Thus, whether insubordination was the Board's actual reason for firing Leonard was an issue left unresolved so as to preclude summary judgment.

### C.

Finally, with respect to the Title VII claims which were tried, Leonard contends that the district court's back-pay award was an abuse of discretion. The distinct court awarded Leonard $620.50 in back-pay, arising from its finding that the Board had violated Title VII by demoting Leonard from lineman to utility man. This sum was arrived at by taking the number of hours Leonard actually worked over the period after his demotion until his discharge, times the differential in the hourly rates in question, less taxes which would have been withheld had the sums actually been paid. Leonard urges that this award should have accounted for additional promotions which he would have received absent the Board's discrimination. Leonard further maintains that the award should have included back-pay for the days which he could not work due to defendant's discriminatory practices which resulted in his disabling "accidents".

■ Back-pay awards for Title VII violations should redress the economic injury which a claimant has suffered as a result of the defendant's discrimination. *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). Whether and to what extent back-pay should be awarded is a matter of the trial court's discretion. *See Thornton v. East Texas Motor Freight*, 497 F.2d 416 (6th Cir.1974). The district court found that Leonard's demotion was the only compensable Title VII violation. Its back-pay award appropriately redressed the economic loss resulting from this demotion and was thus not an abuse of discretion. The additional damages cited by Leonard, as well as such others as he might prove, should be considered in conjunction with his remanded § 1981 claims.

The judgment of the district court is reversed and the case is remanded for further proceedings complying with this opinion.