848 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joe N. READY, Ronald Taylor and Harold Anderson,
Plaintiffs-Appellants, Cross- Appellees,
v.
FORD MOTOR COMPANY and United States Automobile, Aerospace,
and Agricultural Implement Workers of America,
UAW, Local No. 862, Defendants-Appellees,
Ford Motor Company, Defendant-Cross-Appellant.
 Nos. 87-5173, 87-5223.
 United States Court of Appeals, Sixth Circuit.
 May 3, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants Joe Ready, Ronald Taylor and Harold Anderson, three former employees of Ford Motor Company ("Ford"), appeal from a summary judgment, entered on January 8, 1987, in favor of defendant-appellee Ford and defendant-appellee United Automobile, Aerospace and Agricultural Implement Workers of America ("the Union"), dismissing their action for racial discrimination and breach of the Ford-Union collective bargaining agreement. Ford also cross-appeals the denial of its earlier motion for partial summary judgment. However, after reviewing the parties' briefs and arguments, we do not decide the question raised by Ford's cross-appeal, but instead affirm the district court's judgment on its merits.
 
 I.
 
 2
 On October 7, 1983, the plaintiffs filed an action in United States District Court for the Western District of Kentucky alleging that Ford had breached a collective bargaining agreement between itself and the Union and that the Union (Local No. 862) had breached its duty to the plaintiffs of fair representation. The action stemmed from incidents that occurred in 1980-81.
 
 
 3
 In 1980, the three plaintiffs were employed by Ford at Ford's Kentucky Truck Plant ("KTP") located in Jefferson County, Kentucky. All three were laid off in 1980 due to a reduction in the work force. In 1981, however, a second Ford plant in the Louisville, Jefferson County, Kentucky area, the Louisville Assembly Plant ("LAP"), hired several hundred new workers, including former KTP employees. The three plaintiffs sought work at LAP, but were rejected.
 
 
 4
 The plaintiffs claimed that Ford's failure to hire them and the Union's failure to protect their "rights" constituted race discrimination and was in violation of the Ford-Union collective bargaining agreement. The plaintiffs' complaint was subsequently amended to allege that the defendants' actions were violative of 42 U.S.C. Section 1981 (1982).
 
 
 5
 Ford and the Union defended on several grounds. Ford first moved for summary judgment on the Section 1981 claim asserting that Kentucky's one year statute of limitations for personal injury actions was applicable and had not been met by the plaintiffs. On July 22, 1986, however, the district court held that the one year statute was not applicable and denied Ford's motion. But, on January 8, 1987, the district court granted the defendants' motions for summary judgment on the merits of the case. The court held that no evidence had been produced to show that the plaintiffs were discriminated against by Ford or by the Union or that the Ford-Union collective bargaining agreement had been breached. In making its decision, the court correctly reviewed and relied upon the following facts.
 
 
 6
 Ready, Taylor and Anderson were hired as hourly-paid assemblers at Ford's KTP plant in 1972-73. All three were members of the Union and were thus subject to the relevant collective-bargaining agreement. That agreement included the provision that KTP employees' seniority status and rights accrued only at the KTP plant and that no KTP employees had any contractual right to be hired at any other Ford plant or to transfer his or her seniority rights from KTP to another Ford plant. Further, no provision of the agreement required Ford to transfer an employee's seniority at one plant to another.
 
 
 7
 During their employment at KTP, Ready, Taylor and Anderson were involved in multiple disciplinary incidents. According to Ford's records, between August 1, 1978[1] and the date of his layoff, Ready was cited by his supervisors on five occasions for incidents ranging from being off the job without permission to using threatening and abusive language to a supervisor. The latter charge produced a two week suspension.
 
 
 8
 Ford's records regarding Taylor showed that he was involved in six disciplinary incidents at KTP after August 1, 1978, including repeated citations for absenteeism. One such citation resulted in a one week suspension while another resulted in a two week suspension. Taylor was also charged with leaving the premises without permission and fraudulently collecting unemployment compensation. This last incident resulted in Taylor's discharge, but, he was reinstated on a six month waiver, a probationary-type procedure. (In his brief, Taylor argues that he was not discharged for fraudulently collecting benefits and that Ford has confused him with another employee with the same last name. However, at his deposition, Taylor admitted being discharged. He also admitted being reinstated after signing a probationary waiver which acknowledged that he would be terminated for future disciplinary incidents. Thus, his only dispute with Ford's records regarding his discharge was the recordation of the offense he committed. Taylor claims he was disciplined for walking off the job, not for faudulently collecting unemployment benefits. Such a dispute is irrelevant to this appeal.).
 
 
 9
 Anderson, the third plaintiff, also compiled a disciplinary record during his employment at KTP. After August 1, 1978, his record contained five incidents, including citations for poor workmanship and absenteeism.
 
 
 10
 In addition to the above outlined events, Ford's records indicate that all three plaintiffs received multiple unexcused absences during the last three years of their KTP employment.
 
 
 11
 In 1980, as previously stated, the three plaintiffs were laid off from KTP as a result of a massive reduction in the work force. This reduction was necessitated by economic conditions and resulted in the lay off of hundreds of hourly employees according to seniority. This action has nothing to do with those lay offs and is instead confined to the plaintiffs' attempts to gain employment at the other Ford plant in Jefferson County, i.e., LAP.
 
 
 12
 In August 1981, LAP launched a new truck line. This entailed the addition of a second production shift and necessitated the hiring of several hundred additional employees. LAP decided to draw employees from the hundreds of hourly employees laid off from KTP. LAP's management requested that KTP union representatives submit a list of laid off KTP employees who would be interested in working at LAP.
 
 
 13
 Over the course of several months, the Union submitted the names of hundreds of laid off KTP employees. Anderson's name was submitted to Ford on July 28, 1981. The names of Ready and Taylor were submitted on December 23, 1981, along with the names of more than 100 other Union members omitted from the earlier submission. The record clearly demonstrates that the delay in submitting those names had no effect on the decision of whether those former KTP employees would be hired. LAP's Labor Relations Representative testified that the process of selecting LAP workers started in July of 1981 and continued until LAP's hiring requirements were completed in March of 1982.
 
 
 14
 It is also clear that the plaintiffs' records were reviewed by LAP personnel as a part of LAP's hiring procedure. Plaintiffs try to argue to the contrary but present no evidence in support of their argument while a Ford official testified that the plaintiffs were considered for LAP employment.
 
 
 15
 To determine which of the former KTP employees would receive job offers, LAP personnel screened KTP employment records to determine individual employee suitability. Initial decisions were based upon three criteria: attendance, disciplinary records and medical leave history at KTP. This screening procedure was arbitrated by the Union and approved by an Umpire in Ford Motor Co. v. UAW, Case No. 43,053, Appeal No. 26583 (Nov. 30, 1981). In that decision, the Umpire noted that there was no contractual requirement that Ford offer the available jobs at LAP to the laid off KTP employees, but, if LAP elected to offer such employment to laid off KTP employees, LAP had to establish criteria which were fairly and equally applied to all applicants.
 
 
 16
 LAP personnel adopted three criteria that KTP workers had to meet to be eligible for employment. Those criteria were:
 
 
 17
 (1) the employee's attendance record for the preceding three working years, beginning in August 1978, had to contain less than six unexcused absences in any one year;
 
 
 18
 (2) workers whose disciplinary records revealed more than two separate charges or one charge involving a penalty of more than the remainder of a shift were deemed ineligible; and
 
 
 19
 (3) workers whose medical records showed repetitive, short-term, non-serious leaves were deemed ineligible.
 
 
 20
 After LAP examined the plaintiffs' records, they were deemed ineligible for failing to meet the first and second criteria. Each had more than six unexcused absences in a single year. Each had more than two separate charges and each plaintiff's record included at least one charge involving a penalty of more than the remainder of a shift. Thus, under the screening procedure which was arbitrated by the Union and approved by the Umpire, the plaintiffs were ineligible for LAP employment.
 
 
 21
 Each former KTP employee who was deemed ineligible for LAP employment received a letter, dated February 5, 1982, from the Union. These letters notified the rejected applicants of the Umpire's decision that Ford was not required to hire former KTP employees at LAP and that the criteria LAP had established was acceptable. The letters also asked that each rejected employee who sought a Union review of the accuracy of his records to return a form included on the bottom of the letter to the Union. The plaintiffs received this letter and returned the form by the February 1, 1982 deadline. Thereafter, the review process ended and the entire LAP work force was in place by March 1982.
 
 
 22
 Laid off KTP employees, according to the Ford-Union collective bargaining agreement, had seniority status and rights at KTP but not at LAP. Recalls at KTP, however, were conducted in accordance with KTP seniority and without regard to the quality of the employee's work record. Thus, Ready, Taylor and Anderson were each eligible to be called back to work at KTP, and, in fact, all three were recalled. Ready and Taylor, however, declined KTP's employment offer stating that they had found other, more profitable employment. Anderson accepted Ford's offer, however, and, at the time this case was heard, was working at KTP.
 
 II.
 
 23
 We review the plaintiffs' claim that summary judgment was inappropriately entered against them pursuant to a well-known standard. The Supreme Court recently expounded upon the burdens imposed on the parties in a motion for summary judgment. In Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986), the Court stated:
 
 
 24
 [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, ... summary judgment [is mandated] ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. [Thus,] [t]he moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 25
 Id. at 2552-53 (citations omitted and emphasis added). The Court also noted that the
 
 
 26
 [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action."
 
 
 27
 Id. at 2555 (citation omitted).
 
 
 28
 In reviewing the court's decision, it is important to remember that the standard for the grant or the denial of summary judgment is whether there is a genuine issue as to any material fact--not whether there is a genuine issue as to any fact. And, an issue is only material if "the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action." Black's Law Dictionary 881 (6th ed. 1979) (quoted in Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir.1984)).
 
 III.
 
 29
 Plaintiffs first argue that summary judgment was inappropriately granted because they had shown, by statistical evidence, the disparate impact of Ford's hiring process at LAP upon blacks. They also argue that a genuine issue of material fact existed because their disciplinary records, as produced by Ford, were inconsistent and inaccurate. Plaintiffs' claims, however, are without merit.
 
 
 30
 In Leonard v. City of Frankfort Elec. and Water Plant, 752 F.2d 189 (6th Cir.1985), a summary judgment case, this court set forth the required showing a plaintiff must make to avoid an early dismissal of a Section 1981 claim. The court stated:
 
 
 31
 In civil rights actions, pleadings are to be liberally construed and a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. In order to successfully assert a claim of discrimination under Sec. 1981 a claimant must demonstrate that the defendant engaged in purposeful or intentional discrimination. This intent requirement may be satisfied by direct allegations and proof of invidious discriminatory animus or circumstantially demonstrated by alleging and proving discriminatory conduct, practices, or the existence of significant racially disproportionate impact....
 
 
 32
 Thus, where a complaint alleges facts evidencing such a discriminatory purpose or intent, although it fails to specifically allege a discriminatory purpose, it is sufficient to state a claim under Sec. 1981. [See, e.g.i] Long v. Ford Motor Company, 496 F.2d 500 (6th Cir.1974) (plaintiff alleging Sec. 1981 violation must establish that his employment terms vary from those employer accords similarly situated whites).
 
 
 33
 Leonard, 752 F.2d at 193 (citations omitted and emphasis added).
 
 
 34
 In this case, the plaintiffs simply failed to meet their burden of proof. Therefore, for the reasons found in the district court's January 6, 1987 opinion, we affirm the dismissal of the plaintiffs' Section 1981 claim. We note, however, that one ground is alone dispositive of the plaintiffs' claim. That is, summary judgment was properly entered for Ford because the statistical evidence relied upon by the plaintiffs was irrelevant. The plaintiffs claimed that 49.7% of former KTP white employees were hired at LAP while only 35.3% of former KTP black employees were hired. These statistics were derived from the number of KTP employees who had been laid off, not from those who had asked to be considered for employment at LAP. That is an entirely different pool of applicants. Only a subset of KTP employees who had been laid off sought employment at LAP in 1981. Without drawing from this pool, any statistical compilation is insufficient and thus is a failure to establish a prima facie case of discrimination. See Foster v. Tandy Corp., 828 F.2d 1052, 1057 (4th Cir.1987). Therefore, because the plaintiffs did not establish any discriminatory intent on Ford's behalf, their claim was properly dismissed.
 
 IV.
 
 35
 The plaintiffs also argue that the Ford-Union collective bargaining agreement was breached. To prevail in this argument, the plaintiffs must establish that:
 
 
 36
 (1) Ford breached the collective bargaining agreement;
 
 
 37
 (2) the Union's conduct in relation to processing their grievances was "arbitrary, discriminatory, or in bad faith," Vaca v. Sipes, 386 U.S. 171, 190 (1967); and
 
 
 38
 (3) they exhausted all internal Union remedies before bringing this claim.
 
 
 39
 The plaintiffs also must establish that both Ford and the Union breached their duties before they can succeed against either. See Bagsby v. Lewis Bros., Inc., 820 F.2d 799, 801 (6th Cir.1987).
 
 
 40
 First, any argument that Ford breached the agreement by LAP's hiring process is without merit. An Umpire has previously held that such process was appropriate[2] and, as discussed previously, Ford did not discriminate against the plaintiffs in their consideration for employment at LAP.
 
 
 41
 Second, the Union did not breach its duty of fair representation to the plaintiffs because the Union owed no duty to the plaintiffs. A union owes no duty to those who are not members of the bargaining unit. See, e.g., Cooper v. General Motors Corp., 651 F.2d 249, 250 (5th Cir.1981). The plaintiffs were not members of the LAP bargaining unit and thus, the Union did not represent them and could not file a grievance on their behalf because they were not hired at LAP. Indeed, this argument has previously been made by a former employee of KTP and was decided in the same way as the lower court's decision. See Phyllis Quarles v. Ford Motor Co. and UAW, Local 862, No. C-83-0226, slip opinion (W.D.Ky.1984). Other arguments as to the Union's breach of duty are also without merit.
 
 
 42
 Finally, plaintiffs do not even allege that they exhausted their internal remedies, but claim, without factual support, that such efforts would have been futile. As such, and for the above reasons, this claim is without merit. See Monroe v. International Union, UAW, 723 F.2d 22, 24 (6th Cir.1983).
 
 
 43
 Thus, plaintiffs' claims relating to the lower court's grant of summary judgment are incorrect. Further, because we reach our decision by evaluating the plaintiffs' claims of the defendants' alleged racial discrimination and breach of the collective bargaining agreement, we do not decide whether Ford's motion for partial summary judgment was improperly denied.
 
 
 44
 Therefore, for all the foregoing reasons, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 This date is relevant for purposes seen later in this opinion
 
 
 [2]
 We do not get involved in any attempt to overrule the Umpire's decision. Our review of arbitration decisions is extremely limited and to overturn such a decision we must find it to be "wholly baseless and completely without reason." That is not the case in this instance. See e.g., Gunther v. San Diego & Arizona Eastern Ry. Co., 382 U.S. 257, 261 (1965)