12 F.3d 215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas WATSON, Plaintiff-Appellant,
v.
KENT STATE UNIVERSITY BOARD OF TRUSTEES; John Peach;
Donald Kluge; Deborah Plummer, Defendants-Appellees.
 No. 92-4358.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1993.
 
 Before: MARTIN and BOGGS, Circuit Judges; and HULL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Thomas Watson appeals from the district court's granting of the defendants' motion for summary judgment in Watson's suit alleging violations of 42 U.S.C. Secs. 1981 and 1983 on the grounds that the defendants denied him his Fourteenth Amendment rights to due process and equal protection of the laws. Finding that there is no genuine issue of material fact for trial and that the defendants are entitled to judgment as a matter of law, we affirm the order of the district court.
 
 
 2
 * Thomas Watson, a Black graduate student at Kent State University, moved into the University's Terrace Hall dormitory on January 15, 1986. Randall Enlow, a white student, also lived in the same dormitory hall. Watson, upon Enlow's invitation, stored food in Enlow's locked refrigerator. Soon thereafter, Watson became ill and suspected food poisoning. A week later, Watson questioned Enlow about the food; Enlow and another student denied knowledge of any poison. Watson did not approach any University official regarding the food.
 
 
 3
 The next weekend, in early February 1986, Enlow made racial slurs and sexual comments to a Black woman who was visiting with Watson in the dormitory kitchen. Watson asked Enlow to leave; Enlow left. Enlow later denied to Watson that he made the slurs and comments. Watson says that a week later, he overheard Enlow declare on his dormitory phone that he had poisoned Watson's food. Watson again did not contact University officials.
 
 
 4
 In mid-February, Enlow bumped into ("slamm[ed] violently into," according to Watson) Watson as they passed in the hall. Watson said nothing to Enlow at the time, but a few days later confronted Enlow and told him to "stop messing with me." Watson did not report the incident to University officials at the time. Enlow, however, complained to the resident manager of the dorm, defendant Deborah Plummer, alleging that Watson had threatened him. Plummer met with Watson then, and Watson described his version of the events (including the food incident). Plummer told Watson that he should either leave Enlow alone or move out of the dorm; Watson agreed to leave Enlow alone.
 
 
 5
 In addition to his complaint to Plummer, Enlow also contacted the University police, on February 19, 1986, alleging harassment by Watson. On February 21, the police contacted Watson. Watson described his version of the food, kitchen, and "bumping" incidents. Watson alleges that Officer Shanafelt told defendant John Peach, chief of the Kent State police, about the food poisoning.
 
 
 6
 On March 1, 1986, Watson and Enlow were both using the dorm bathroom. Enlow began yelling at Watson and they argued. Another student tried to break up the dispute, but was hit by Enlow. The police were called, but no charges were filed against Enlow or Watson. Plummer talked to both Enlow and Watson about this incident and initiated disciplinary actions against both.
 
 
 7
 On March 4, 1986, Enlow told Watson, in Bowman Hall, that he had poisoned him and that he intended to "poison him to death." Watson contacted the University police. The police told him to contact Mike McDonald, the director of safety and security of residence services. McDonald told Watson that he would look into the matter. Watson alleges that the police made no investigation of this incident, despite his having called a week later again to request an investigation. Watson also alleges that defendant Donald Kluge, director of Kent State resident services, talked with Plummer about these events and that both had knowledge of Enlow's emotional instability.
 
 
 8
 Plummer gave both Watson and Enlow the option of either moving from Terrace Hall or receiving disciplinary notices. Watson refused to move. At the end of March, Watson and Enlow both received disciplinary notices.
 
 
 9
 On April 23, 1986, a student conduct court disciplinary hearing was held. The conduct court found Enlow guilty of the Bowman Hall incident and found Watson not guilty. The defendants claim that Enlow advised the hearing officer that he intended to appeal the decision within the allotted seven days and was therefore not yet told to move out of the dorm; Watson contends that Enlow filed no notice of appeal.
 
 
 10
 On April 25, Enlow contacted the University Police, alleging that Watson had been harassing him. Officer Shanafelt referred Enlow to the county prosecutor's office to discuss the possibility of filing charges.
 
 
 11
 On April 26, 1986, as he was passing Enlow's room, Watson heard Enlow again saying that he was going to poison Watson. Watson called the University police. The police came and questioned both Watson and Enlow. After the police left, Watson and Enlow met with Kluge and the assistant resident manager of Terrace Hall (Plummer, the resident manager, was out of town at the time). Kluge told Watson and Enlow that one of them would have to move out of the dorm. Watson objected when Kluge suggested that he would flip a coin to decide who should leave. Kluge then unilaterally decided that Enlow should move out. Watson said he would leave the dorm for the weekend and went to his room to get his belongings. As Watson was leaving the dorm, Enlow confronted Watson and shot him several times, leaving him paralyzed. Enlow then shot and killed himself.
 
 
 12
 Watson brought his Secs. 1981 and 1983 actions against the Kent State University Board of Trustees, chief of Kent State police Peach, resident services director Kluge, and resident dorm manager Plummer. The district court dismissed, pursuant to the Eleventh Amendment, Watson's action against the Board of Trustees and against the individual defendants in their official capacities, leaving the action pending as to the three individual defendants in their individual capacities. Watson alleged violation of his rights to due process and equal protection of the laws under the Fourteenth Amendment. Watson also claimed that the three defendants intentionally or negligently inflicted emotional distress on him in violation of state law.
 
 
 13
 The district court, agreeing with the reasoning of the magistrate judge to whom the case had been referred for report and recommendation, concluded that the defendants had no absolute duty under the due process clause to protect Watson from physical harm caused by Enlow, a private individual, citing DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998 (1989); therefore, the complaint failed to state a claim under Sec. 1983 for violation of Watson's due process rights.
 
 
 14
 On the alleged denial of equal protection of the laws, the district court found that Watson could not identify a single incident in which the defendants treated him in a discriminatory manner and did not present any evidence that the police ignored his complaints or had a policy of discriminating against Blacks. Therefore, Watson's equal protection claim also failed. The district court thus granted the defendants' motion for summary judgment. The court also declined to exercise its pendent jurisdiction over the state law claims, dismissing them without prejudice.
 
 
 15
 On appeal, Watson argues that there was sufficient evidence to present a genuine issue of material fact on his claim that the defendants denied him equal protection of the laws by not providing protective services on an equal basis. Further, Watson argues that the magistrate judge should have permitted him to discover information that Kent State had about Enlow's psychological condition.
 
 II
 
 16
 * This court reviews de novo the district court's grant of the defendants' motion for summary judgment. Baggs v. Eagle-Picher Industries, Inc., 957 F.2d 268, 271 (6th Cir.), cert. denied, 113 S.Ct. 466 (1992). This court need affirm the district court only if it determines that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When evaluating this appeal, this court must view the evidence in the light most favorable to the non-moving party. Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).
 
 
 17
 The moving party need not support its motion with evidence disproving the nonmoving party's claim, but must only " 'show[ ]'--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. Id., 477 U.S. at 322, 106 S.Ct. at 2552. The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).
 
 
 18
 Watson appeals the grant of summary judgment on his equal protection claim, but does not pursue the due process claim. In order to prove his equal protection claim, Watson must show that the defendants purposefully discriminated against him. General Building Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150 (1982); Village of Arlington Hts. v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563 (1977); Poe v. Haydon, 853 F.2d 418, 430 (6th Cir.1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 788 (1989) (citing Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 276, 99 S.Ct. 2282, 2294 (1979)). Such discriminatory purpose must be a motivating factor in the actions of the defendants. Arlington Heights, 429 U.S. at 265-66, 97 S.Ct. at 563.
 
 
 19
 Arlington Heights further instructs that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Id., 429 U.S. at 266, 97 S.Ct. at 564. The discriminatory intent requirement "may be satisfied by direct allegations and proof of invidious discriminatory animus or circumstantially demonstrated by alleging and proving discriminatory conduct [or] practices...." Leonard v. City of Frankfort Elec. and Water Plant Bd., 752 F.2d 189, 193 (6th Cir.1985). Statements of mere conclusions are not sufficient to survive summary judgment disposition. See Ana Leon T. v. Federal Reserve Bank of Chicago, 823 F.2d 928, 930 (6th Cir.), cert. denied, 484 U.S. 945, 108 S.Ct. 333 (1987) (citing Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir.1971)).
 
 
 20
 After carefully reviewing the record and construing the factual allegations and inferences derived from them in favor of Watson, we conclude that Watson has failed to identify any specific instance in which the defendants treated him in a discriminatory manner. We review the allegations with respect to each individual defendant in turn.
 
 
 21
 1. Defendant Plummer, resident manager of the dorm. Watson could not "specifically say" that Plummer, a Black woman, treated him differently because of his race. J.A. at 247. Watson's brief makes no specific assertions regarding Plummer, except that she and the other defendants failed to take prompt effective action to protect him. Appellant's Brief at 13. Watson alleges that this failure was due in part to race, but offers no specific factual allegations that would tend to prove that assertion. Further, Plummer was out of town the day Enlow shot Watson. J.A. at 315-16, 452. Watson asserts that each of the defendants, including Plummer, had authority to remove Enlow, that Plummer knew of Enlow's alleged instability, and that if she had removed Enlow, Watson would have been safe; Watson, however, fails to allege that his race was the reason for not removing Enlow.
 
 
 22
 2. Defendant Peach, director of Kent State police. Watson also alleges that Peach failed to take prompt effective action to protect him, but again only asserts conclusions that this failure was due to race. Watson asserts that Peach had authority to remove Enlow, that Peach knew Enlow was unstable, and that if Peach had removed Enlow, Watson would have been safe. Appellant's Brief at 13-14. Watson, however, offers no specific factual allegations to support the contention that these failures were motivated by his race. Watson relies on the largely hearsay affidavit of Professor Francis Dorsey of Kent State, who alleges that there has been a pattern of racial bias in enforcement of laws and student conduct rules by the Kent State police, citing several examples of discriminatory conduct in the past. This affidavit offers conclusions but no factual allegations to support the allegation of a discriminatory policy based on race. Jt.App. at 934, 898. When Watson contacted the police, they responded. Taking Watson's version of the facts to be true, however, the police did not respond to the Bowman Hall incident, but referred Watson to the director of resident safety. To the extent that this supports an inference that Peach denied Watson protective services on an equal basis, no facts are offered to show that race was the reason for the failure to respond here.
 
 
 23
 Also, according to Watson, the police denied protective services by not removing Enlow after the student conduct court decision; however, Watson offers only the conclusion that race was the reason.[1] Watson asserts that Peach had more than just a supervisory role; Watson charges that Peach was integrally involved in the investigation of the Enlow-Watson conflict. Assuming he was so involved, Watson still must assert facts that demonstrate that Peach had a discriminatory intent. Again, he fails to do this.
 
 
 24
 3. Defendant Kluge, director of resident services. Watson fails to allege specific facts that would demonstrate that race was the reason for Kluge's failure to take prompt effective action to protect him. Watson asserts as circumstantial evidence of discriminatory intent Kluge's failure to detain Enlow at the time he was going to leave (shortly before he was shot). Appellant's Brief at 13-14. However, Watson did not ask that Kluge detain Enlow; further, Kluge, at Watson's objection, withdrew the suggestion of a coin toss and told Enlow to move out. Watson asserts that Kluge was aware of the danger to him and was aware of Enlow's instability, yet did nothing in response. Watson does not assert that race was the reason, nor does he offer facts that would tend to prove that race was the reason.
 
 
 25
 Thus, because Watson has failed to identify, in his briefs or at oral argument, specific instances in which the defendants treated him in a discriminatory manner, Watson has failed to establish an equal protection claim and the defendants are therefore entitled to judgment as a matter of law.[2]
 
 B
 
 26
 Watson also asserts that the district court erred in preventing discovery of counselling records regarding Enlow in the possession of Kent State. Watson sought them to establish that the defendants knew of the danger that Enlow presented to Watson. The magistrate judge denied access to these records because neither Enlow nor his estate had given express consent to the release of the records and because, after an in camera review, the magistrate judge found the records to be irrelevant to this case. We conclude that it was not an abuse of discretion to deny access to the records. See Wolotsky v. Huhn, 960 F.2d 1331, 1338 (6th Cir.1992) (an order denying discovery reversible only if it was an abuse of discretion resulting in substantial prejudice). Even if Watson had access to the records and they showed what he alleges them to contain (i.e., that the defendants knew of the danger to Watson), that still does not help him establish his equal protection claim, which requires discriminatory animus.
 
 III
 
 27
 For the foregoing reasons, we AFFIRM the order of the district court granting the defendants' motion for summary judgment.
 
 
 
 *
 The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The defendants argue that Enlow's stated intention to appeal the conduct court decision stayed the requirement that he move. Appellees' Brief at 12. Watson questions how Enlow can appeal from his plea of guilt. Appellant's Reply Brief at 8. The record indicates that Enlow pled guilty to the Terrace Hall bathroom incident, but contested, and was found guilty of, the Bowman Hall incident. See Jt.App. at 185, 895, 901
 
 
 [2]
 Because we affirm the granting of summary judgment to the defendants, we need not address their claim of qualified immunity